THOMAS, Judge.
Michael Joe Green, Aletha Johnson, and Johnny James Brown (“the claimants”) ap *258 peal from a summary judgment in favor of the City of Montgomery (“the City”) in their action seeking the return of money seized during a traffic stop. We reverse.
On December 6, 2006, Montgomery police officers stopped the claimants as they were traveling through Montgomery on Interstate 65. While issuing the claimants a speeding ticket, the officers smelled a strong marijuana odor and noticed a large amount of cash in a bag on the floorboard behind the passenger seat. When asked how much money was in the bag, the claimants responded, “about $20,000.” The officers asked for permission to search the vehicle, and the claimants did not respond. The officers ordered a K-9 unit to the scene to conduct an open-air search. The search resulted in a positive identification of marijuana in the passenger door. The officers then conducted a full search of the vehicle that produced a small amount of marijuana and additional cash. The officers seized the marijuana and all the cash, totaling $32,353. Johnny James Brown, the claimant closest to the marijuana, was charged with unlawful possession of marijuana in the second degree, a misdemeanor. See § 13A-12-214, Ala.Code 1975.
The difference between first-degree and second-degree unlawful possession is whether the marijuana is for personal use. Id. Despite having charged Brown with the lesser, personal-use offense, the City transferred the seized currency to the federal Drug Enforcement Administration (“DEA”) pursuant to an arrangement whereby the City would receive 80% of the money and the DEA would retain 20% of the money as a fee. This process is known as “adoptive seizure.” See 21 U.S.C § 881 (2002).
The adoptive-seizure process begins when state or local authorities seize property as part of a criminal investigation or arrest. Generally, the state or local officials either make a determination that forfeiture is not possible under state law or conclude that it is advantageous to them to transfer the matter to federal authorities for a federal administrative forfeiture proceeding. See I.R.S. Manual 9.7.2.7.3 (July 25, 2007); Asset Forfeiture Law, Practice, and Policy, Asset Forfeiture Office, Criminal Division, United States Department of Justice, Vol. I (1988) at 38 (cited in Johnson v. Johnson, 849 P.2d 1361, 1363 (Alaska 1993)). Once state or local officials have determined that an adoptive seizure is advantageous, they file a request with federal authorities. The appropriate federal agency then decides whether to accept or reject the request. If the adoptive-seizure request is accepted, the property is taken into the custody of federal agents and federal administrative forfeiture proceedings begin. At the successful conclusion of those proceedings, usually 80% of the forfeited property is given back to the state or local agency.
In the present case, the seizure occurred on December 6, 2006. The City filled out the requisite forms to begin the adoptive-seizure process on December 27, 2006. During the time that the United States Department of the Treasury was reviewing the City’s adoptive-seizure request, the claimants filed a “Complaint and Motion for Release and Return of Seized Money” in the Montgomery Circuit Court on December 29, 2006. The DEA formally adopted the seizure on January 11, 2007, and United States Marshals took custody of the money on January 23, 2007.
One week later, the City removed the claimants’ circuit court action to federal court to address the claimants’ Fourteenth Amendment claim. The claimants subsequently amended their complaint, deleting the Fourteenth Amendment claim and asking that the case be remanded to the *259 Montgomery Circuit Court. The case was remanded on April 17, 2007. However on February 7, 2007, while the case was still in federal court, the claimants were notified of the DEA forfeiture proceeding and made no response.
With the case back in the Montgomery Circuit Court, the claimants filed on April 26, 2007, a motion to dismiss their case; the circuit court granted the motion the same day. Arguing that they had made a clerical error in the caption and that the motion should have been styled as a motion for a summary judgment consistent with the substance of the motion, the claimants convinced the circuit court to reinstate the case on August 3, 2007. In the period between the dismissal and the reinstatement of the claimants’ action, the DEA deposited the seized currency in the Asset Forfeiture Fund.
On April 24, 2008, the City filed a motion for a summary judgment, arguing that the circuit court no longer had jurisdiction over the seized currency. The circuit court granted the City’s motion on May 13, 2008. The claimants filed a timely post-judgment motion, which the circuit court denied on September 3, 2008. The claimants filed a timely notice of appeal with this court on October 15, 2008.

Standard of Review

“An order granting or denying a summary judgment is reviewed de novo, applying the same standard as the trial court applied. American Gen. Life & Accident Ins. Co. v. Underwood, 886 So.2d 807, 811 (Ala.2004). In addition, ‘[t]his court reviews de novo a trial court’s interpretation of a statute, because only a question of law is presented.’ Scott Bridge Co. v. Wright, 883 So.2d 1221, 1223 (Ala.2003). Where, as here, the facts of a case are essentially undisputed, this Court must determine whether the trial court misapplied the law to the undisputed facts, applying a de novo standard of review. Carter v. City of Haleyville, 669 So.2d 812, 815 (Ala.1995).”
Continental Nat’l Indem. Co. v. Fields, 926 So.2d 1033, 1034-35 (Ala.2005).

Discussion

The authority for adoptive seizure, although not explicit, comes from 21 U.S.C. § 881(e)(1)(A), which allows the United States Attorney General, at the conclusion of federal forfeiture proceedings, to return seized property back to the state or local agency “which participated directly in the seizure or forfeiture of the property.” Federal adoption of a seizure has the same effect as if the seizure had originally been made by the United States. See United States v. One Ford Coupe Auto., 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926).
Federal adoption cannot take place, however, after a state court has already exercised valid in rem jurisdiction over the seized property. This conclusion follows logically from the fact that two courts cannot have concurrent in rem jurisdiction and that the first court to acquire in rem jurisdiction does so to the exclusion of all other courts. See Ex parte Consolidated Graphite Corp., 221 Ala. 394, 397-98, 129 So. 262, 265 (1930) (stating that “[t]he well-established rule is that where the action is in rem, ... that court which first acquires jurisdiction draws to itself the exclusive authority to control and dispose of the res”). Indeed, most federal courts have arrived at the same conclusion. See, e.g., United States v. One 1979 Chevrolet C-20 Van, 924 F.2d 120, 122 (7th Cir.1991) (citing United States v. $79,12349 in United States Cash and Currency, 830 F.2d 94 (7th Cir.1987)), superseded by statute as noted in United States v. Sixty-Two Thousand Six Hundred Dol *260 lars ($62,600.00), 899 F.Supp. 378 (N.D.Ill.1995); Scarabin v. DEA, 966 F.2d 989 (5th Cir.1992). In order for an Alabama court to acquire jurisdiction, the res must be “ ‘validly seized and brought within the control of the court.’” Garrett v. State, 739 So.2d 49, 52 (Ala.Civ.App.1999) (quoting City of Gadsden v. Jordan, 760 So.2d 873, 875 (Ala.Civ.App.1998), reversed on other grounds, 760 So.2d 877 (Ala.1999)) (emphasis omitted). For the res to be within the control of the court, the court “must have actual or constructive control of the res when an in rem forfeiture suit is initiated.” Republic Nat’l Bank of Miami v. United States, 506 U.S. 80, 87, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992).
The claimants argue that their “Complaint and Motion for Release and Return of Seized Money” initiated an in rem action. They reason that, because concurrent in rem jurisdiction is not allowed, their action vested the state court with jurisdiction before federal jurisdiction attached. Thus, they conclude that the state court acquired jurisdiction to the exclusion of the federal court. The claimants further argue that the DEA administrative forfeiture proceeding was improper, that the circuit court should not have granted the City’s summary-judgment motion on jurisdictional grounds, and that the money is due to be returned to them.
The City contends that the adoptive seizure relates back in time and, accordingly, that federal jurisdiction over the res was acquired first. The City argues, in the alternative, either that the federal proceedings began before the claimants filed their motion for a return of the seized money or that the claimants’ action for the return of the money was not an in rem action. Finally, the City argues that, even if the claimants’ action was an in rem action, the windows of time when the case was removed or dismissed resulted in the circuit court’s relinquishing jurisdiction, thereby allowing the federal authorities to acquire jurisdiction.
The main issues in this case are whether the claimants’ action was an in rem action and when federal jurisdiction attached. Before proceeding to address those issues, however, we must first address initial arguments by both sides. The claimants initially argued that the mere seizure by the Montgomery police officers vested in rem jurisdiction in the state court because there is no state law that authorizes the transfer of the seized property to federal authorities. The claimants further argued that, because the City must point to some state authority for the seizure, the only available authority is § 20-2-93(b), Ala.Code 1975, which provides:
“(b) Property subject to forfeiture under this chapter may be seized by state, county or municipal law enforcement agencies upon process issued by any court having jurisdiction over the property. Seizure without process may be made if:
“(1) The seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;
“(2) The property subject to seizure has been the subject of a prior judgment in favor of the state in a criminal injunction or forfeiture proceeding based upon this chapter;
“(3) The state, county, or municipal law enforcement agency has probable cause to believe that the property is directly or indirectly dangerous to health or safety; or
“(4) The state, county or municipal law enforcement agency has probable cause to believe that the property was used or is intended to be used in violation of this chapter.”
*261 The City responded by claiming that the currency was not seized in order to be forfeited pursuant to § 20-2-93(b), but rather to be used as evidence in a criminal investigation, and, the City asserted, that use is allowed under the adoptive-seizure doctrine.
The claimants correctly point out that there is no authority other than § 20-2-98 by which, given the circumstances of this case, the City could have seized the currency under state law,[1] and, they contend, § 20-2-93 does not permit the transfer of seized assets to federal authorities. Contrary to the claimants’ arguments, however, § 20-2-93 neither expressly nor impliedly prohibits a state or local law-enforcement agency from transferring seized property to federal authorities. Section 20-2-93(d) provides, in part, that
“[w]hen property is seized under this chapter, the state, county or municipal law enforcement agency may:
“(1) Place the property under seal;
“(2) Remove the property to a place designated by it;
“(3) Require the state, county or municipal law enforcement agency to take custody of the property and remove it to an appropriate location for disposition in accordance with law; and
“(4) In the case of real property or fixtures, post notice of the seizure on the property, and file and record notice of the seizure in the probate office.”
(Emphasis added.) Subsections (d)(2) and (d)(3) provide that state and local officials may transfer seized property to any location they designate. Subsection (d)(3) appears to contemplate that state and local officials may transfer seized property to another governmental entity, so long as the disposition of the property is “in accordance with law.” Notably, subsection (d)(3) does not require that the disposition of seized property be in accordance with Alabama law. Cf DeSantis v. State, 384 Md. 656, 866 A.2d 143 (Md.Ct.App.2005) (holding that a Maryland forfeiture statute similar to the Alabama forfeiture statute does not require state and local officials to obtain a judicial turnover order before delivering currency to the DEA).
In the present case, the City’s police officers stopped the vehicle in which the claimants were traveling and made the seizure without any involvement from federal authorities. Thus, whatever actions the City took, it was acting under the authority of state law. It is clear that the City cannot simply seize property without state authority under the guise of the federal adoptive-seizure process.
“Indeed, almost all of the cases having considered this issue have assumed that state authorities cannot avoid their own state laws when they transfer property to federal officials [pursuant to the adoptive-seizure doctrine]. See, e.g., In re United States Currency, $844,520.00, 136 F.3d [581] at 583-84 [(8th Cir.1998)] (Loken, J., concurring); [United States v.] One 1987 Mercedes Benz Roadster, 2 F.3d [241] at 243-44 [ (7th Cir.1993) ]; [United States v.] One 1979 Chevrolet C-20 Van, 924 F.2d [120] at 122-23 [(7th Cir.1991) ]; Johnson [v. Johnson ], 849 P.2d [1361] at 1363 [(Alaska 1993)]; In re $3,166,199, [337 Ark. 74,] 987 S.W.2d [663] at 667 [ (1999) ]). But see Madewell [v. Downs ], 68 F.3d [1030] at 1040-43 [ (8th *262 Cir.1995) ]; [United States v.] Winston-Salem[/Forsyth County Bd. of Educ.], 902 F.2d [267] at 272-73 [ (4th Cir.1990) ]. The U.S. Department of Justice has also urged deference to state law in this area. See In re United States Currency, $844,520.00, 136 F.3d at 583-84; United States Department Of Justice, Asset Forfeiture Law and Practice Manual, 2-21 to 2-22 (June 1988). We are in accord with these cases, and hold that State Police cannot avoid [state law] merely by asserting its right to request federal adoption and forfeiture .... ”
DeSantis v. State, 384 Md. at 664, 866 A.2d at 148. Having determined that the City could not have seized the currency pursuant to any authority other than § 20-2-93, but that § 20-2-93 does not prohibit the transfer- of seized property to federal authorities, we now return to deciding who had valid in rem jurisdiction.
Our analysis of that issue starts with the question of whether the claimants’ action in the Montgomery Circuit Court was an in rem action. The City contends that, because the action was not nominally against the currency itself and did not expressly seek to invoke in rem jurisdiction, it was, therefore, not an in rem action. The claimants sued the City and two named Montgomery police officers in their official and individual capacities, seeking declaratory and injunctive relief and demanding “an order releasing and returning to them certain personal property belonging to them unlawfully seized by the Montgomery, Alabama Police Department.” The claimants alleged that the police officers had no probable cause to seize the currency because, they asserted, there was no connection between the currency and the charged offense of possession of marijuana for personal use. They further alleged that,
“[although the claimants have continued to lay claim to the money, it remains in the custody of the City ... or its agents, therefore interfering with, and preventing the claimants’ right of dominion over and use of the money and thereby depriving [them] of [them] property without due process of law in violation of the Fourteenth Amendment to the United States Constitution and Article I, section IV of the Alabama Constitution.”
It is well established that a pleading is judged by its substance rather than by its form. See Breaux v. Bailey, 789 So.2d 204 (Ala.2000); King Mines Resort, Inc. v. Malachi Min. & Minerals, Inc., 518 So.2d 714 (Ala.1987); Lockhart v. Phenix City Inv. Co., 488 So.2d 1353 (Ala.1986); Sexton v. Prisock, 495 So.2d 581 (Ala.1986); and Smith v. Tyson Foods, Inc., 884 So.2d 861 (Ala.Civ.App.2003). If the substance of the pleading asserts grounds usually associated with an in rem action, the action should be treated as an in rem action. King Mines, 518 So.2d at 718.
The claimants’ pleading was labeled as a “Complaint and Motion For Release and Return of Seized Money.” The focus of the complaint was clearly the seized currency. Although the City and two of its police officers were named as defendants, the only relief the claimants sought with respect to the officers was that they be “enjoined from harassing, intimidating, threatening or otherwise interfering with the lawful travel habits of the [claimants].” We do not believe that merely naming the City or its officers in the caption of the complaint converted what was essentially an in rem or quasi in rem proceeding with respect to the seized currency into a personal action against the named defendants. Cf. First Nat’l Bank of Columbiana v. State, 403 So.2d 258, 260 (Ala.Civ.App.1981) (noting that state officials seeking *263 forfeiture of seized property are permitted to bring an action “in the name of the State against either the property seized or against the person, if known, in possession when seized”). We hold that the substance of the complaint takes priority over its form and that the claimants’ action was an in rem or quasi in rem action.
The Montgomery Circuit Court obtained jurisdiction through the claimants’ in rem action only if federal jurisdiction was not obtained first. Determining when federal jurisdiction attached will resolve who first acquired in rem jurisdiction. Although Alabama law requires a two-step process of possession and then the filing of an in rem court action, federal forfeiture is administrative and the second step is not required to obtain federal jurisdiction. So long as the state court-has not exercised in rem jurisdiction, federal jurisdiction begins the moment the res is controlled by federal agents. See United States v. $506,231 in United States Currency, 125 F.3d 442 (7th Cir.1997). In the present case, if federal control began the moment the Montgomery Police Department filled out a form to request that the DEA adopt the seizure, then federal jurisdiction was acquired first, to the exclusion of the state court. If federal control occurred at some time after the claimants initiated their action, then the state court acquired jurisdiction first, to the exclusion of the federal authorities. On December 27, 2006, the Montgomery Police Department filled out the request form. Two days later, the claimants filed their in rem or quasi in rem action in state court.
A similar case decided by the United States Court of Appeals for the Seventh Circuit held that federal control does not begin at the initiation of federal proceedings. See United States v. $506,231 in United States Currency, supra. In that case, the City of Chicago seized currency and a “Motion for Return of Seized Property” was filed in state court. 125 F.3d at 445. On the day before the action was filed in state court, the United States had applied for a seizure warrant. While the case in state court was still pending, the United States filed a forfeiture complaint. The federal district court ruled that the money was subject to forfeiture. The Seventh Circuit Court of Appeals, finding that the federal court had asserted control over the res after the state court, reversed, holding that the initiation of federal proceedings one day before the filing of the in rem action in state court did not give the federal court jurisdiction.
In addition to federal caselaw and statutes, federal administrative rules imply that federal control could not have started at the moment the City made the adoptive-seizure request. See I.R.S. Manual 9.7.2.7.3 (stating the requirements for approving an adoptive-seizure request). In addition, a Treasury Department Directive sets out the criteria that “should be met before a Treasury agent agrees to adopt a state or local seizure.” Department of the Treasury Executive Office for Asset Forfeiture, Directive 34 (January 17, 2000) (emphasis added). The Directive further states that a review of the request from the local agency must be performed before the transfer to federal custody. Id. These regulations imply that federal agents do not consider themselves to be in control of the res before they agree to accept a state or local government’s request for an adoptive seizure. Therefore, it cannot be said that the federal government acquired jurisdiction before the initiation of the claimants’ in rem or quasi in rem action.
Because federal control did not begin when the City filed the adoptive-seizure request, it must have begun either at the time the DEA accepted the adoptive-seizure request or at the time the United *264 States Marshals took physical possession of the currency. The applicable federal statute provides:
“Property taken or detained under this section shall not be repleviable, but shall be deemed to be in the custody of the Attorney General, subject only to the orders and decrees of the court or the official having jurisdiction thereof .... ”
21 U.S.C. § 881(c) (emphasis added). The federal government controls the res when it is “taken or detained” during a time when no other court has jurisdiction over the res. As applied to this case, “property taken” refers to the actual possession by United States Marshals. Even if “detained” refers to federal approval of the City’s adoptive-seizure request, both of those events occurred after the claimants’ in rem or quasi in rem action was filed. The approval came 13 days after the initiation of the in rem action, and actual possession began 25 days after the initiation of the action. Therefore, we need not determine precisely which of the two dates would trigger federal control. Here, federal jurisdiction could only have attached after the state in rem action had been filed. Thus, the state court acquired in rem jurisdiction to the exclusion of the federal government.
There are two windows of time when, the City claims, the state court lost jurisdiction and the federal authorities acquired it. The first window occurred after the case was removed to federal court and before it was remanded back to state court. The City removed the case to federal court to address the Fourteenth Amendment claim. The claimants then amended their complaint to delete the Fourteenth Amendment claim and asked that the case be remanded to the Montgomery Circuit Court. While the claimants were waiting for the case to be remanded, the DEA notified them of the federal forfeiture proceedings.
Given that concurrent in rem jurisdiction is not allowed and that federal control of the res is a necessary condition of federal jurisdiction, a valid exercise of federal jurisdiction occurs when the res is taken or detained and the state court is not already exercising in rem jurisdiction. See United States v. $79,123.49, 830 F.2d at 98, in which the United States Court of Appeals for the Seventh Circuit responded to the government’s argument that federal jurisdiction attached by virtue of mere possession of the property:
“The United States argues, first, that the district court had jurisdiction by virtue of the federal government’s possession of the property. This argument goes much too far. Possession obtained through an invalid seizure neither strips the first court of jurisdiction nor vests it in the second. Taylor v. Carryl, 61 U.S. [(20 How.) 583] at 599-600 [(1857)]. To hold otherwise would substitute a rule of force for the principle of mutual respect embodied in the prior exclusive jurisdiction doctrine.”
Here, the federal government possessed the res before removal. Thus, even if we accepted the City’s claim that the “removal window” allowed the federal court to acquire jurisdiction, it is clear that federal agents had improperly attempted to exercise concurrent in rem jurisdiction well before that window had opened. Federal jurisdiction could have attached only if federal agents took or detained the res at a time when no other court had jurisdiction. Here, federal authorities took control of the currency after the in rem action had been filed and when the state court had jurisdiction. If the DEA had initially taken or detained the res during the “removal window,” then the federal court would properly have acquired jurisdiction. The *265 DEA did not, however, take or detain the property at that time. Thus, federal jurisdiction did not attach during the “removal window.” When the federal court remanded the case to state court, it restored state jurisdiction. See Lowe v. Jacobs, 243 F.2d 432 (5th Cir.1957).
The second window of time occurred between the time the case was dismissed and the time it was reinstated. The City contends that the state court lost jurisdiction when the case was dismissed and that the federal government properly acquired jurisdiction before the case was reinstated. The only federal action that occurred during the “dismissal window,” however, was the actual deposit of the currency into the Asset Forfeiture Fund at the conclusion of the federal administrative forfeiture proceedings. The res was not initially taken or detained during this time, and Treasury Department rules explicitly require that the property must be taken or detained before the start of proceedings. See generally Department of the Treasury, Executive Office for Asset Forfeiture, Directive 34 (January 17, 2000). Thus, the City’s position is at odds with the caselaw, statutes, and administrative rules we have previously addressed.

Conclusion

The claimants’ action in state court was an in rem or quasi in rem action, and it invoked state in rem jurisdiction before the federal government attempted to acquire jurisdiction. Federal in rem jurisdiction begins when the res is taken or detained and no other court has previously and properly exercised jurisdiction. Federal control does not begin the moment a state or local entity requests that federal agents adopt a seizure. The City has asserted no mechanism of federal control while the claimants’ action was initially pending in state court, other than its request for an adoptive seizure. The unique issues of removal and dismissal may have created windows of time during which federal in rem jurisdiction could have been obtained. However, both windows opened after the federal government had improperly attempted to exercise concurrent jurisdiction.
Accordingly, the summary judgment is reversed and the cause is remanded so that the claimants may assert any and all defenses to the seizure and forfeiture under state law.
REVERSED AND REMANDED.
THOMPSON, P.J., and PITTMAN, BRYAN, and MOORE, JJ., concur.

. Other than § 20-2-93, only two statutory provisions allow for the forfeiture of property. Section 13A-12-200.8, Ala.Code 1975, deals with forfeiture of obscene materials, and § 28-4-286, Ala.Code 1975, deals with the forfeiture of vehicles.