PER CURIAM.[1]
Ernest Alexander appeals from a summary judgment entered in favor of the City of Birmingham (“the city”) in his action seeking the return of cash seized during a search of his residence.
The record indicates the following. On June 4, 2009, the Jefferson District Court issued a warrant to search Alexander’s residence as part of an investigation into the sale of illegal drugs. The warrant, which was based on the affidavit of Officer R. Walker of the Birmingham Police Department (“BPD”), states that the items seized in the search are to be held “until further order from the District Court of Jefferson County, Alabama.”
On June 5, a joint task force of officers from the BPD narcotics unit and agents from the federal Drug Enforcement Administration (“DEA”) executed the warrant. The search of Alexander’s residence revealed cocaine, marijuana, digital scales, a firearm, and $88,675 in cash.[2] The cash initially was taken to the BPD’s facility. A drug-detecting dog alerted on the cash, indicating it had had contact with a controlled substance. BPD Detective John Walker, who had been cross-deputized five years earlier by the United States Department of Justice as a DEA task-force officer, sealed the cash in a DEA evidence bag, transported it to the Birmingham district office of the DEA, and placed it in the overnight drop box. Walker later took the cash to a bank, where he was issued a cashier’s check for $38,675 made payable to the Unites States Marshal. The check was then given to federal agent James Langnes.
On October 26, 2009, a complaint for civil forfeiture of the cash was filed in the United States District Court for the Northern District of Alabama. Alexander was served with the complaint on November 12, 2009, but he failed to respond and took no action to reclaim the money. On August 10, 2010, the federal district court entered a default judgment of forfeiture regarding the money.
On March 16, 2011, Alexander filed a complaint in the Jefferson Circuit Court alleging that his property had been seized pursuant to § 20-2-93, Ala.Code 1975, and asserting that he was entitled to the return of the cash because no state forfeiture proceeding had been initiated. The city moved for a summary judgment, first asserting that Alexander’s complaint was barred by the nonclaims statute, § 11^7-23, Ala.Code 1975 (providing that all tort claims against a municipality are barred if *1253 not presented within six months of accrual). Next, the city contended that the circuit court lacked jurisdiction because, it said, the cash had at all relevant times been in the possession of federal agents, who had participated in the search and had delivered the cash to the DEA. In the alternative, the city argued that, even if the cash initially had been seized by BPD officers, exclusive federal jurisdiction over any in rem proceeding against the cash attached — pursuant to 21 U.S.C. § 881 and the doctrine of adoptive forfeiture — when the cash was transferred to the DEA.
Alexander filed a cross-motion for a summary judgment in his favor, arguing that the circuit court had constructive control, and thus exclusive in rem jurisdiction, over the case by virtue of the search warrant issued by the Jefferson District Court. After a hearing, the circuit court denied Alexander’s motion and entered a summary judgment in favor of the city. After his postjudgment motions were denied, Alexander appealed to this court.
Appellate review of a summary judgment is de novo. Ex parte Ballew, 771 So.2d 1040 (Ala.2000). A motion for a summary judgment is to be granted when no genuine issue of material fact exists and the moving party is entitled to a judgment as a matter of law. Rule 56(c)(8), Ala. R. Civ. P. A party moving for a summary judgment must make a prima facie showing “that there is no genuine issue as to any material fact and that [it] is entitled to a judgment as a matter of law.” Rule 56(c)(3); see Lee v. City of Gadsden, 592 So.2d 1086, 1038 (Ala.1992). If the movant meets this burden, “the burden then shifts to the nonmovant to rebut the movant’s prima facie showing by ‘substantial evidence.’ ” Lee, 592 So.2d at 1038 (footnote omitted). “Substantial evidence is evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.” West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala.1989); see § 12-21-12(d), Ala. Code 1975.
Alexander contends that the money seized from his residence pursuant to the warrant issued by the Jefferson District Court vested jurisdiction over the property in the state court and not in the federal court. Therefore, he says, the federal court could not exercise valid in rem jurisdiction to find that the money should be forfeited to the United States.
“ ‘A civil forfeiture proceeding is an action in rem against the property itself.’” Garrett v. State, 739 So.2d 49, 52 (Ala.Civ.App.1999) (quoting City of Gadsden v. Jordan, 760 So.2d 873, 875 (Ala.Civ.App.1998), rev’d on other grounds, 760 So.2d 877 (Ala.1999) (citing in turn Wherry v. State ex rel. Brooks, 637 So.2d 1353, 1355 (Ala.Civ.App.1994))).
“Federal adoption cannot take place ... after a state court has already exercised valid in rem jurisdiction over the seized property. This conclusion follows logically from the fact that two courts cannot have concurrent in rem jurisdiction and that the first court to acquire in rem jurisdiction does so to the exclusion of all other courts. See Ex parte Consolidated Graphite Corp., 221 Ala. 394, 397-98, 129 So. 262, 265 (1930) (stating that ‘[t]he well-established rule is that where the action ■ is in rem, ... that court which first acquires jurisdiction draws to itself the exclusive authority to control and dispose of the res ’).”
Green v. City of Montgomery, 55 So.3d 256, 259 (Ala.Civ.App.2009).
“ ‘A court acquires jurisdiction over the property in an in rem proceeding when the res is validly seized and brought within the control of the court. [Republic Nat’l Bank of Miami v. United *1254 States, 506 U.S. 80] at 84-85[, 113 S.Ct. 554, 121 L.Ed.2d 474 (1992) ]. In Alabama, the res is validly seized either pursuant to “process issued by [a] court, ” see § 20-2-93(b), Ala.Code 1975; Brown & Hagin Co. v. McCullough, 194 Ala. 638, 69 So. 924 (1915), or pursuant to one of the exceptions listed in § 20-2-93(b)(l)-(4), Ala.Code 1975.... In order to have subject matter jurisdiction in a forfeiture case, “the court must have actual or constructive control of the res when an in rem forfeiture suit is initiated.” Republic Nat’l Bank of Miami v. United States, 506 U.S. at 86[, 113 S.Ct. 554], “[J]urisdiction, once vested, is not divested.” Id. at 84[, 113 S.Ct. 554].’ ”
Garrett, 739 So.2d at 52 (quoting City of Gadsden v. Jordan, 760 So.2d at 875).
In the present case, the city argues that the res — i.e., the money — was within federal control at the outset because, the city claims, the money was seized by DEA agents and the money remained in the continuous possession of federal officials through the federal administrative-forfeiture proceeding. The city’s argument is not supported by the record. Specifically, the DEA’s own investigative report indicates that BPD officers Michael Turner and Scott Salser seized the money.
Alexander argued in the circuit court and now maintains on appeal that, by virtue of the search warrant issued by the Jefferson District Court, the state court initially obtained (and never relinquished) exclusive jurisdiction of the money. In support of that argument, Alexander cites, among other things, the language of the search warrant itself, as well as § 15-5-14, Ala.Code 1975. The search warrant issued by the Jefferson District Court commanded the BPD officers to seize designated property, specifically, marijuana and “all proceeds and paraphernalia from the drug trade,” and to “hold it until further order from the District Court of Jefferson County, Alabama.” The warrant corresponds to the directive of § 15-5-14, which provides:
“When the property is taken under a search warrant, it shall be delivered to the court issuing the warrant. If the property was stolen or embezzled, the court shall cause it to be delivered to the owner, on satisfactory proof of his title and the payment by him of all fees. If the warrant was issued on the grounds specified in subdivisions (2) and (3) of Section 15-5-2, the officer effecting the wamnt must retain the property in his possession, subject to the order of the court to which he is required to return the proceedings or of the court in which the offense is triable in respect to which the property was taken.”
(Emphasis added.)
Subsections 15-5-2(2) and (3) provide:
“A search warrant may be issued on any one of the following grounds:
[[Image here]]
“(2) Where [the property] was used as the means of committing a felony; or
“(3) Where [the property] is in the possession of any person with the intent to use it as a means of committing a public offense or in the possession of another to whom he may have delivered it for the purpose of concealing it or preventing its discovery.”
The city counters Alexander’s argument with the assertion that, even if BPD officers seized the money, the money came within federal control when the BPD officers transferred the money to the DEA, the DEA adopted the seizure, and the United States Attorney for the Northern District of Alabama initiated federal administrative-forfeiture proceedings re *1255 garding the money, all of which events, the city states, occurred before Alexander filed a complaint in the Jefferson Circuit Court on March 16, 2011, seeking the return of the money. In its brief on appeal, the city asks this court to apply the doctrine of adoptive forfeiture, pursuant to which, the city says, the federal court would have jurisdiction in this case.
“The authority for adoptive seizure, although not explicit, comes from 21 U.S.C. § 881(e)(1)(A), which allows the United States Attorney General, at the conclusion of federal forfeiture proceedings, to return seized property back to the state or local agency ‘which participated directly in the seizure or forfeiture of the property.’ Federal adoption of a seizure has the same effect as if the seizure had originally been made by the United States. See United States v. One Ford Coupe Auto., 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926).”
Green v. City of Montgomery, 55 So.3d at 259. In Ex parte Bingham, [Ms. 2100676, Jan. 6, 2012] — So.3d-,-(Ala.Civ. App.2012), this court wrote:
“In Green [v. City of Montgomery ], we described how the adoptive-seizure process works:
“ ‘The adoptive-seizure process begins when state or local authorities seize property as part of a criminal investigation or arrest. Generally, the state or local officials either make a determination that forfeiture is not possible under state law or conclude that it is advantageous to them to transfer the matter to federal authorities for a federal administrative forfeiture proceeding. See I.R.S. Manual 9.7.2.7.3 (July 25, 2007); Asset Forfeiture Law, Practice, and Policy, Asset Forfeiture Office, Criminal Division, United States Department of Justice, Yol. I (1988) at 38 (cited in Johnson v. Johnson, 849 P.2d 1361, 1363 (Alaska 1993)). Once state or local officials have determined that an adoptive seizure is advantageous, they file a request with federal authorities. The appropriate federal agency then decides whether to accept or reject the request. If the adoptive-seizure request is accepted, the property is taken into the custody of federal agents and federal administrative forfeiture proceedings begin. At the successful conclusion of those proceedings, usually 80% of the forfeited property is given back to the state or local agency-’
“55 So.3d [256,] 258 [(Ala.Civ.App.2009) ].”
We note that, in Green, Montgomery police officers “filled out the requisite forms to begin the adoptive-seizure process .... ” and that the United States Department of the Treasury reviewed the request to determine whether it would accept the adoptive seizure. Green, 55 So.3d at 258. In Edney v. City of Montgomery, 960 F.Supp. 270 (M.D.Ala.1997), Montgomery police officers seized approximately $280,000 in cash from Edney and another man who had been detained at the Montgomery airport. After the seizure, “the DEA adopted the city’s seizure by authorizing the city to seize the money on behalf of the DEA and to transfer the money to the DEA.” Id. at 273. The federal district court found that the DEA had adopted the seizure of the currency at issue: thus, the federal court had jurisdiction. See also United States v. $119,000 in United States Currency, 793 F.Supp. 246, 248 (D.Haw.1992) (in adoptive-seizure case, a Honolulu police officer “requested that the DEA adopt the state seizure for federal forfeiture” and transferred the currency to the DEA).
*1256 In this case, there is no evidence indicating that the adoptive-seizure process was ever begun, much less brought to fruition. A BPD officer provided the affidavit from which the Jefferson District Court issued the warrant, which stated that the BPD was to hold any items seized pursuant to the warrant “until further order from the District Court of Jefferson County, Alabama.” According to the DEA’s investigative report, two BPD officers discovered and seized the money at issue. The money was taken to the BPD’s facility, where a drug-detecting dog alerted on the money. At that point, a law-enforcement officer who had been deputized as a DEA agent sealed the money in an envelope and deposited it with the DEA. There is no evidence indicating that there was a decision made by any state or local officials that “forfeiture [was] not possible under state law or ... that it [was] advantageous to them to transfer the matter to federal authorities for a federal administrative forfeiture proceeding.” Green, 55 So.3d at 258 (and authorities cited therein). Likewise, there is no evidence indicating that the BPD, the Jefferson County district attorney, the Jefferson County district court or circuit court, or any other state agent or official filed a request for the DEA to adopt the seizure. In addition, there is no evidence indicating that “the appropriate federal agency” decided whether to accept or reject the request. The evidence submitted indicates that federal “control” of the money came about because one person, John Walker, deposited the money in the DEA overnight drop box and then later took the money to a bank and had a check made out to the United States Marshal. The check was then given to a federal agent. Walker’s actions are insufficient to establish that the adoptive-seizure doctrine is applicable in this case. In fact, the evidence indicates that depositing the money in the overnight drop box was a violation of the Jefferson District Court’s command that law-enforcement officials hold the money and other seized items until further order from the court.
“ ‘The [summary-judgment] movant has the initial burden of making a prima facie showing that there is no genuine issue of material fact; if the movant makes that showing, the burden then shifts to the nonmovant to present substantial evidence of each element of the claim challenged by the movant.’ Harper v. Winston County, 892 So.2d 346, 349 (Ala.2004) (emphasis added). However, if the movant does not satisfy his initial burden, ‘then he is not entitled to judgment. No defense to an insufficient showing is required.’ Ray v. Midfield Park, Inc., 293 Ala. 609, 612, 308 So.2d 686, 688 (1975) (emphasis added).”
White Sands Group, L.L.C. v. PRS II, LLC, 998 So.2d 1042, 1054-55 (Ala.2008).
The record in this case indicates that jurisdiction of this matter vested in the state court upon the issuance of the warrant issued by the Jefferson District Court, see Garrett, 739 So.2d at 51-52. The city failed to present sufficient evidence from which to find, as a matter of law, that the federal court had obtained jurisdiction over the money at issue or that the state court had been divested of jurisdiction in this case; thus the city failed to meet its burden of demonstrating that there were no genuine issues of material fact and that it was entitled to a judgment as a matter of law. Therefore, we conclude that the circuit court erred in entering a summary judgment in favor of the city.
Alexander also argues that the circuit court erred in ruling that Alexander’s complaint seeking the return of his property asserted a claim for conversion, a tort *1257 claim. Because that claim had not been presented to the municipality within six months of its accrual, the circuit court found that Alexander’s action was barred by § 11-47-23, Ala.Code 1975, also known as the nonclaims statute.
The nonclaims statute provides, in pertinent part, that any claim against a municipality for damages growing out of torts shall be presented to the municipal clerk for payment within six months from the accrual thereof, or the claim shall be barred. For purposes of the nonclaims statute, a tort claim against a municipality is defined as:
“Any claim against a governmental entity, for money damages only, which any person is legally entitled to recover as damages caused by bodily injury or property damage caused by a negligent or wrongful act or omission committed by any employee of the governmental entity while acting within the scope of his employment, under circumstances where the governmental entity, if a private person, would be liable to the claimant for such damages under the laws of the State of Alabama.”
§ 11-93-1(5), Ala.Code 1975.
Here, Alexander’s complaint seeks the return of seized property. The complaint does not assert a claim for money damages for bodily injury or property damage; indeed, it does not allege bodily injury or property damage. Because Alexander seeks only the return of his property, this is an in rem proceeding and not an action sounding in tort. See Bingham, — So.3d at-; and Green, 55 So.3d at 265 (stating that the claimant’s action seeking the return of money seized at a traffic stop was an in rem or quasi in rem action). Because Alexander’s complaint does not state a claim subject to the nonclaims statute, § 11-47-23 is not applicable in this case. Cf. Gore v. Alabama Dep’t of Pub. Safety, 883 So.2d 1225, 1227 (Ala.2003) (stating that the doctrine of sovereign immunity was inapplicable to the plaintiffs claim “regarding the seizure and retention of his cellular telephone and personal documents” because the plaintiff was “seeking the physical return of the seized items, not damages for their conversion”). Accordingly, the circuit court erred in ruling that Alexander’s complaint was barred by the nonclaims statute.
For the reasons set forth above, the judgment of the circuit court is reversed, and this cause is remanded for further proceedings consistent with this opinion.
Alexander’s request for an attorney fee on appeal is denied.
REVERSED AND REMANDED.
THOMPSON, P. J., and MOORE, J., concur.
BRYAN and THOMAS, JJ., concur in the result, without writing.
PITTMAN, J., dissents, with writing.

. This case was originally assigned on October 31, 2011. It was reassigned on May 16, 2012.

. The record does not indicate what, if any, criminal charges were brought against Alexander.