PITTMAN, Judge,
dissenting.
This appeal requires this court to determine whether the principles we set out in Green v. City of Montgomery, 55 So.3d 256 (Ala.Civ.App.2009), and Ex parte Bingham, [Ms. 2100676, January 6, 2012] — So.3d - (Ala.Civ.App.2012) — which dealt with property seized during a war-rantless search and later transferred to the federal Drug Enforcement Administration (“DEA”) — also apply when property is seized pursuant to a warrant and later transferred to the DEA. The main opinion answers that inquiry in the negative, drawing a distinction between property seized pursuant to a search warrant and property seized during a warrantless search. In my judgment, there are three reasons not to draw such a distinction; therefore, I respectfully dissent.
*1258 I.
First, this court determined in Green, supra, that § 20-2-93, Ala.Code 1975, the statute applicable to seizures, “neither expressly nor impliedly prohibits a state or local law-enforcement agency from transferring seized property to federal authorities,” 55 So.3d at 261 (emphasis added). Notably, subsection (d) of § 20-2-93 makes it clear that the statute applies to property “taken or detained” with or without a warrant. The main opinion does not cite § 20-2-93(d).
II.
The basis for the main opinion’s decision to reverse the summary judgment in favor of the City of Birmingham (“the City”) is unclear. On one hand, the main opinion implies that a transfer to the DEA of the property seized during the search of Ernest Alexander’s residence was invalid as a matter of law because it was accomplished without a court order. 99 So.3d at 1256 (stating that “depositing the cash in the [DEA] overnight drop box was a violation of the Jefferson District Court’s command that law-enforcement officials hold the money and other seized items until further order from the court” (emphasis added)). On the other hand, the main opinion suggests that if a particular process (which it designates as the “adoptive-forfeiture process”) had been followed by the Birmingham Police Department (“BPD”) or some other nonjudicial state actor, then the property could have been transferred to the DEA without a court order.
A. The requirement of a court order. In Green, we recognized that, unlike some other states, Alabama has not legislated that there be a “judicial turnover order” before property is delivered to the DEA under § 20-2-93(d). We stated that
“subsection (d)(3) [of § 20-2-93, which permits a state, county, or municipal law-enforcement agency to ‘take custody of the property and remove it to an appropriate location for disposition in accordance with law’] does not require that the disposition of seized property be in accordance with Alabama law. Cf. DeSantis v. State, 384 Md. 656, 866 A.2d 143 (Md.Ct.App.2005) (holding that a Maryland forfeiture statute similar to the Alabama forfeiture statute does not require state and local officials to obtain a judicial turnover order before delivering currency to the DEA).”
55 So.3d at 261. The main opinion does not cite § 20-2-93(d), nor does it overrule Green or disavow the reasoning of Green. In fact, the main opinion cites no authority for the implied holding that a judicial turnover order is required other than the language of the search warrant itself. The main opinion states:
“The search warrant [which commanded the BPD officers to seize designated property and to ‘hold it until further order from the District Court of Jefferson County, Alabama,’] corresponds to the directive of § 15-5-14, [Ala.Code 1975,] which provides:
“‘.... the officer effecting the warrant must retain the property in his possession, subject to the order of the court to which he is required to return the proceedings or of the court in which the offense is triable in respect to which the property was taken.’ ”
99 So.3d at 1254.
Actually, the language of the search warrant is more restrictive than the language of either § 15-5-14 or § 20-2-93(d). The search warrant directs the seizing officer to “hold [the property] until further order of the [issuing] [c]ourt,” whereas § 15-5-1 requires the seizing officer to “retain the property in his possession, subject to” a later order of the issuing court or a court trying the related criminal offense.
*1259 I submit that there is a difference between an action whose performance is forbidden without a court order and an action that, once performed, is subject to being overturned by a later court order, as, for example, when a trial court grants a motion to suppress the fruits of a warrantless search in a criminal case.
Further, section 15-5-14 must be read in conjunction with § 20-2-93(d), which provides, in pertinent part:
“Property taken or detained under this section ... is deemed to be in the custody of the state, county or municipal law enforcement agency subject only to the orders and judgment of the court having jurisdiction over the forfeiture proceedings. When property is seized under this chapter, the state, county or municipal law enforcement agency may:
“(1) Place the property under seal;
“(2) Remove the property to a place designated by it;
“(3) Require the state, county or municipal law enforcement agency to take custody of the property and remove it to an appropriate location for disposition in accordance with law.... ”
As the emphasized language in § 20-2-93(d) indicates, once property has been seized (whether pursuant to a warrant or during a warrantless search), that property is deemed to be in the custody of law-enforcement officials, but it is subject to a court order. Alabama’s statutory warrant- and-forfeiture scheme thus allows state law-enforcement officials broader control over seized property than might be evident from a mere reading of the language of the search warrant in this case. The manner of exercising control is, however, subject to being set aside upon a later court order.
Our statutory warrant-and-forfeiture scheme distinguishes this case from Scarabin v. Drug Enforcement Administration, 966 F.2d 989 (5th Cir.1992), the primary authority upon which Alexander relies for his argument that the state court (a) acquired jurisdiction over his property by virtue of the state-issued search warrant and (b) never relinquished such jurisdiction. In Scarabin, the United States Court of Appeals for the Fifth Circuit determined that, under Louisiana law, the state court “had exclusive control over the res by virtue of issuing the search warrant that procured the seized funds.” 966 F.2d at 993. The court based its decision on a Louisiana statute that provided:
“ ‘When property is seized pursuant to a search warrant, it shall be retained under the direction of the judge. If seized property is not to be used [as] evidence or is no longer needed as evidence, it shall be disposed of according to law, under the direction of the judge.’ ”
Id. at 994 (quoting La.Code Crim. Proc. Ann. art. 167; emphasis added). The Louisiana statutory requirement that disposition of seized property be “under the direction of the judge” imposes a sine-qua-non condition upon the disposition of seized property that does not exist in the language of § 15-5-14 or § 20-2-93. Read in conjunction, §§ 15-5-14 and 20-2-93 allow the transfer of seized property but make that transfer subject to being overturned upon the issuance of a later judicial order. Cf. United States v. $490,920 in United States Currency, 911 F.Supp. 720, 723-24 (S.D.N.Y.1996) (declining to exercise federal jurisdiction over seized property despite the transfer of physical custody to federal authorities, because state court had denied state district attorney’s motion to turn the property over to the federal government and had granted a cross-motion for the return of the property to the parties from whom it had been seized).
*1260 B. Compliance with a judicial-forfeiture process. The implication in the main opinion that a court order is required for the transfer to federal agents of property seized pursuant to a state-issued warrant is inconsistent with its suggestion that compliance with the “adoptive-forfeiture process” by nonjudicial state actors might be sufficient to allow transfer of the property to federal agents. The main opinion concludes that the city presented no evidence indicating (a) that a state or local official decided that “ ‘forfeiture [was] not possible under [Alabama] law or ... that it [was] advantageous ... to transfer the matter to federal authorities for a federal administrative forfeiture proceeding,’” 99 So.3d at 1256 (quoting Green, 55 So.Sd at 258), (b) that a state or local official requested that the DEA adopt the seizure, and (c) that the DEA accepted the request. Accordingly, the main opinion holds that “the city failed to meet its burden of demonstrating that there were no issues of genuine fact” as to whether “the federal court had obtained jurisdiction ... or ... [whether] the state had been divested of jurisdiction” because the city presented no evidence indicating that the adoptive-forfeiture process “was ever begun, much less brought to fruition.” 99 So.3d at 1256.
Notwithstanding the fact that the main opinion treats as prescriptive a sequence of events that the Green court outlined in purely descriptive terms, see 55 So.3d at 258, one can infer, from the facts that a joint task force of BPD officers and DEA agents participated in the search of Alexander’s residence and that a BPD officer who had been cross-deputized by the DEA years earlier transferred the funds to the DEA, that such a process was, in fact, followed in this case. Nevertheless, it is inconsistent to fault the city for failing to demonstrate compliance with a process that can be carried out by nonjudicial actors if, as also indicated in the main opinion, only a court order will authorize an adoptive forfeiture of property seized pursuant to a warrant. I have no problem with a requirement that only a court order will authorize an adoptive forfeiture of property — irrespective of whether the property has been seized pursuant to a warrant or seized in a warrantless search, but I think that such a requirement should be mandated by the legislature, not by this court. At present, there is no such requirement in § 20-2-93.
III.
Finally, I believe it is bad public policy to differentiate, for purposes of adoptive forfeiture, between warrantless searches and searches pursuant to a warrant. Making property seized in a warrantless search more easily transferrable to federal agents via the adoptive-forfeiture doctrine than property seized pursuant to a warrant will only give law-enforcement officers an incentive to conduct more warrantless searches, thereby undermining the Fourth Amendment.
Based on the foregoing reasons, I would affirm the judgment of the Jefferson Circuit Court.