PER CURIAM.
This is the second time this civil-forfeiture matter has come before this court. Ernest Alexander filed an action against the City of Birmingham (“the city”) in the Jefferson Circuit Court (“the trial court”) seeking the return of cash seized during a search of his residence. Alexander asserted that he was entitled to the return of the cash because, although a forfeiture proceeding had been prosecuted in federal court, no state forfeiture proceeding had been initiated. Alexander v. City of Birmingham, 99 So.3d 1251, 1252 (Ala.Civ.App.2012).
The city moved for a summary judgment, asserting, among other things, that the trial court lacked jurisdiction
“because, it said, the cash had at all relevant times been in the possession of federal agents, who had participated in the search and had delivered the cash to the [federal Drug Enforcement Administration (‘DEA’) ]. In the alternative, the city argued that, even if the cash initially had been seized by [Birmingham Police Department (‘BPD’) ] officers, exclusive federal jurisdiction over any in rem proceeding against the cash attached — pursuant to 21 U.S.C. § 881 and the doctrine of adoptive forfeiture — when the cash was transferred to the DEA.
“Alexander filed a cross-motion for a summary judgment in his favor, arguing that the circuit court had constructive control, and thus exclusive in rem jurisdiction, over the case by virtue of the search warrant issued by the Jefferson District Court.”
Alexander, 99 So.3d at 1253.
After a hearing on the parties’ motions, the trial court entered a summary judgment in favor of the city. Id. This court, relying on Green v. City of Montgomery, 55 So.3d 256, 259 (Ala.Civ.App.2009), and Ex parte Bingham, 129 So.3d 1017 (Ala. *1190 Civ.App.2012), reversed the summary-judgment, stating:
“ ‘In Green [ v. City of Montgomery ], we described how the adoptive-seizure process works:
“ '“The adoptive-seizure process begins when state or local authorities seize property as part of a criminal investigation or arrest. Generally, the state or local officials either make a determination that forfeiture is not possible under state law or conclude that it is advantageous to them to transfer the matter to federal authorities for a federal administrative forfeiture proceeding. See I.R.S. Manual 9.7.2.7.3 (July 25, 2007); Asset Forfeiture Law, Practice, and Policy, Asset Forfeiture Office, Criminal Division, United States Department of Justice, Vol. I (1988) at 38 (cited in Johnson v. Johnson, 849 P.2d 1361, 1363 (Alaska 1993)). Once state or local officials have determined that an adoptive seizure is advantageous, they file a request with federal authorities. The appropriate federal agency then decides whether to accept or reject the request. If the adoptive-seizure request is accepted, the property is taken into the custody of federal agents and federal administrative forfeiture proceedings begin. At the successful conclusion of those proceedings, usually 80% of the forfeited property is given back to the state or local agency.”
“‘55 So.3d [256,] 258 [ (Ala.Civ.App.2009) ].’
“We note that, in Green, Montgomery police officers ‘filled out the requisite forms to begin the adoptive-seizure process .... ’ and that the United States Department of the Treasury reviewed the request to determine whether it would accept the adoptive seizure. Green, 55 So.3d at 258. In Edney v. City of Montgomery, 960 F.Supp. 270 (M.D.Ala.1997), Montgomery police officers seized approximately $280,000 in cash from Edney and another man who had been detained at the Montgomery airport. After the seizure, ‘the DEA adopted the city’s seizure by authorizing the city to seize the money on behalf of the DEA and to transfer the money to the DEA.’ Id. at 273. The federal district court found that the DEA had adopted the seizure of the currency at issue: thus, the federal court had jurisdiction. See also United States v. $119,000 in United States Currency, 793 F.Supp. 246, 248 (D.Haw.1992) (in adoptive-seizure case, a Honolulu police officer ‘requested that the DEA adopt the state seizure for federal forfeiture’ and transferred the currency to the DEA).
“In this case, there is no evidence indicating that the adoptive-seizure process was ever begun, much less brought to fruition. A BPD officer provided the affidavit from which the Jefferson District Court issued the warrant, which stated that the BPD was to hold any items seized pursuant to the warrant ‘until further order from the District Court of Jefferson County, Alabama.’ According to the DEA’s investigative report, two BPD officers discovered and seized the money at issue. The money was taken to the BPD’s facility, where a drug-detecting dog alerted on the money. At that point, a law-enforcement officer who had been deputized as a DEA agent sealed the money in an envelope and deposited it with the DEA. There is no evidence indicating that there was a decision made by any state or local officials that ‘forfeiture [was] not possible under state law or ... that it [was] advantageous to them to transfer the matter to federal authorities for a *1191 federal administrative forfeiture proceeding.’ Green, 55 So.3d at 258 (and authorities cited therein). Likewise, there is no evidence indicating that the BPD, the Jefferson County district attorney, the Jefferson County district court or circuit court, or any other state agent or official filed a request for the DEA to adopt the seizure. In addition, there is no evidence indicating that ‘the appropriate federal agency’ decided whether to accept or reject the request. The evidence submitted indicates that federal ‘control’ of the money came about because one person, John Walker, deposited the money in the DEA overnight drop box and then later took the money to a bank and had a check made out to the United States Marshal. The check was then given to a federal agent. Walker’s actions are insufficient to establish that the adoptive-seizure doctrine is applicable in this case. In fact, the evidence indicates that depositing the money in the overnight drop box was a violation of the Jefferson District Court’s command that law-enforcement officials hold the money and other seized items until further order from the court.”
Alexander, 99 So.3d at 1255-56.
This court concluded that the evidence in the record indicated that jurisdiction of this matter vested in the state court upon the Jefferson District Court’s issuance of the warrant to search Alexander’s residence. This court then held that
“[t]he city failed to present sufficient evidence from which to find, as a matter of law, that the federal court had obtained jurisdiction over the money at issue or that the state court had been divested of jurisdiction in this case; thus the city failed to meet its burden of demonstrating that there were no genuine issues of material fact and that it was entitled to a judgment as a matter of law.”
Id. at 1256. The summary judgment was reversed, and the cause was remanded to the trial court for further proceedings. Id. at 1257. The city did not seek a rehearing of this court’s decision, and it did not file a petition for a writ of certiorari with our supreme court.
On remand, Alexander again moved for a summary judgment, claiming that, because the city had not promptly instituted forfeiture proceedings, he was entitled to the return of his money. The city opposed the motion, and on October 30, 2012, the trial court held a hearing on the matter. On November 5, 2012, the trial court entered a summary judgment in favor of Alexander and ordered the city to return the money seized pursuant to the search warrant. On November 19, 2012, the trial court amended its summary judgment to include an award of interest, bringing the total amount the city was ordered to pay Alexander to $46,604.15. The city appealed.
Two of the issues the city raises in this appeal were addressed in Alexander, supra, namely: (1) whether the state court had exclusive in rem jurisdiction over the property that was seized pursuant to the search warrant; and (2) whether federal adoption was perfected in this case. In Alexander, this court held that “[t]he city failed to present sufficient evidence from which to find, as a matter of law, that the federal court had obtained jurisdiction over the money at issue or that the state court had been divested of jurisdiction in this case.” Alexander, 99 So.3d at 1256. Furthermore, after quoting from Green v. City of Montgomery, supra, and Bingham, supra, regarding the procedure for a federal adoptive forfeiture, this court also determined that “there is no evidence indicating that the adoptive-seizure process *1192 was ever begun, much less brought to fruition.” Id.
‘““[U]nder the ‘law of the case’ doctrine, ‘whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.’ ” ’ ” Walden v. ES Capital, LLC, 89 So.3d 90, 107 (Ala.2011) (quoting Miller & Miller Constr. Co. v. Madewell, 920 So.2d 571, 572-73 (Ala.Civ.App.2005), quoting in turn other cases) (emphasis added). “ ‘ “The' law-of-the-case doctrine provides that when a court decides upon a rule of law, that rule .should continue to govern the same issues in subsequent stages in the same case, thereby hastening an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided.” ’ ” Id. (quoting Martin v. Cash Express, Inc., 60 So.3d 236, 249 (Ala.2010), quoting in turn Belcher v. Queen, 39 So.3d 1023, 1038 (Ala.2009)); see also Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987)(same).
The record indicates that, on remand, the parties did not submit new evidence for the trial court’s consideration.[1] Furthermore, our holdings as to the issues decided in Alexander remain the law of the case. The city did not seek a rehearing of our decision, and it did not file a petition for a writ of certiorari with our supreme court. Consequently, this court will not at this point reconsider those issues decided in Alexander.
The city raises two additional contentions in this appeal that are arguably “new” issues, i.e., issues that this court did not decide in Alexander. See Bagley ex rel. Bagley v. Creekside Motors, Inc., 913 So.2d 441, 446 (Ala.2005) (“[T]he doctrine of law of the case ... is inapplicable to this case because we did not, in the original appeal, dispositively decide the issue[s now raised].”); Lyons v. Walker Reg’l Med. Ctr., Inc., 868 So.2d 1071, 1077 (Ala.2003) (quoting Gray v. Reynolds, 553 So.2d 79, 81 (Ala.1989)) (“ ‘[O]n remand the issues decided by an appellate court become the “law of the case.” ’ ”).
As to those “new” issues, the city first contends that, under equity, a good-faith exemption should exist governing law enforcement’s action in this forfeiture case. Specifically, the city asserts that the good-faith exception to the exclusionary rule, which allows law-enforcement officers to use at trial evidence that is seized in a flawed search, should be applicable to allow the forfeiture of items seized during a valid search and seizure. The city cites no authority for its contention from this or any other jurisdiction, and it acknowledges that this argument “breaks new legal ground.”
The good-faith exception to the exclusionary rule is not applicable under the facts of this case. The exclusionary rule and the exceptions to that rule deal with evidentiary matters, not the ultimate issue to be determined. The validity of the search of Alexander’s residence has not been challenged, and the evidence seized during that search was not deemed inadmissible during the forfeiture proceedings. We decline to accept the city’s invitation to extend the good-faith exception to the exclusionary rule to encompass what would amount to a “good-faith forfeiture” of *1193 items seized during a valid search and seizure.
The city also contends that the summary judgment in favor of Alexander was improperly entered because, it says, a genuine issue of material fact exists as to whether Alexander actually has an interest in the money at issue. We note that when the trial court entered the summary judgment in favor of the city, there was no dispute that Alexander had an interest in the money. The money was found in his residence. The city presented the sworn declaration of Assistant United States Attorney James D. Ingram, which is included as an exhibit in the record on appeal in this case, stating: “The only known prospective claimant to the defendant currency is Earnest [sic] J. Alexander....” Ingram goes on to note that Alexander did not appear or otherwise defend the forfeiture action in federal court, as noted by this court in Alexander, 99 So.3d at 1252. In other words, that Alexander had an interest in the money was “undisputed.” The law is clear that a nonmoving party may not create a genuine issue of material fact by submitting affidavits or testimony that contradicts its own earlier sworn testimony. McAlpin v. City of Decatur, 628 So.2d 611, 613 (Ala.1993); see also Tittle v. Alabama Power Co., 570 So.2d 601, 604 (Ala.1990) (“This court has held that when a party to an action has given clear answers to unambiguous questions that negate the existence of any genuine issue of fact; that party cannot later create an issue of fact by submitting an affidavit that directly contradicts, without explanation, that earlier testimony.”).
On remand, Alexander moved for a summary judgment seeking the return of the money. The city did not offer evidence to contradict its earlier position that Alexander was the only known claimant to the money. The city presented no evidence on the issue. For example, there is no evidence indicating that other people lived in the residence where the money was found or that other people were present at the home when law-enforcement officials executed the search warrant. Instead, the city now speculates that, because Alexander did not appear in the federal forfeiture action, a genuine issue of material fact exists regarding whether the money seized at Alexander’s house was actually his. Mere speculation is not sufficient to create a genuine issue of material fact. Kelly v. Panther Creek Plantation, L.L.C., 934 So.2d 1049 (Ala.2006). Accordingly, we conclude that the city failed to present substantial evidence that Alexander did not have an interest in the money at issue.
In its reply brief, the city argues that the supreme court’s holding in Ervin v. City of Birmingham, 137 So.3d 901 (Ala.2013), requires reversal of the trial court’s judgment in this case. In Ervin, our supreme court affirmed a summary judgment entered in favor of the city, holding that “Ervin’s action [seeking the return of cash seized in a federal forfeiture proceeding] amounted] to a collateral attack in state court on a final judgment entered by a federal court.... As the successor in title to the forfeited property, the [city was] entitled to the res judicata benefit of that final judgment.” Ervin, 137 So.3d at 904. As discussed, however, this court has already held in this case that “[t]he city failed to present sufficient evidence from which to find,- as a matter of law, that the federal court had obtained jurisdiction over the money at issue or that the state court had been divested of jurisdiction in this case.” Alexander, 99 So.3d at 1256. The city failed to seek a rehearing or petition our supreme court for a writ of certiorari; therefore, that holding *1194 became the law of the case and is not subject to further appellate review.
Furthermore, because of the procedural posture of this case, we find NHS Management, LLC v. Wright, 24 So.3d 1153 (Ala.Civ.App.2009), to be applicable. In that case, NHS Management, LLC (“NHS”), operated a nursing home in which Viola Jenkins was a patient. Jenkins died while in the care of the nursing home, and Peter Wright, as the administrator of Jenkins’s estate, filed a complaint alleging numerous claims against NHS. Id. at 1154.
NHS moved to compel arbitration. On April 3, 2007, the trial court held a hearing on the motion. Wright did not attend the hearing, and the trial court entered an order granting the motion to compel arbitration and staying all proceedings. Wright did hot appeal from the order. Id.
Several months later, the trial court ordered the parties to provide it with a written status update within 30 days or face dismissal of the action. Ultimately, Wright filed a motion asking the trial court to reconsider its order compelling arbitration in light of a May 4, 2007, supreme court decision that, Wright said, changed the law on which the trial court had based its prior decision. The trial court granted the “motion to reconsider” and set aside its earlier order compelling arbitration. NHS appealed from that order. Id.
This court treated the “motion to reconsider” as a motion filed pursuant to Rule 60(b)(5), Ala. R. Civ. P., which allows a court to set aside a final judgment or order if a prior judgment on which it is based has been reversed or otherwise vacated, among other things. This court determined that Wright was not entitled to relief from the order compelling arbitration, noting that Rule 60(b)(5) “ ‘ “ ‘does not authorize relief from a judgnent on the ground that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding.’ ” ’ ” Id. at 1156 (quoting Kupfer v. SCI-Alabama Funeral Servs., Inc., 893 So.2d 1153, 1157 (Ala.2004), quoting in turn other authorities).
In this case, a certificate of judgment was issued as to this court’s judgment in Alexander holding that the federal court did not have jurisdiction over the money seized in the search of Alexander’s residence. The city did not seek a rehearing of that decision, and it did not petition our supreme court for a writ of certiorari. The law this court relied on in reaching its holding was subsequently overruled or declared erroneous, but in another, unrelated proceeding, i.e., Enin. Accordingly, on the authority of NHS Management and the cases cited therein, the city is not entitled to relief from this court’s holding in Alexander. This conclusion is consistent with the law-of-the-case doctrine.
The city has failed to demonstrate that the trial court erred in entering the summary judgment in favor of Alexander. Therefore, the judgment is affirmed.
AFFIRMED.
THOMPSON, P.J., and THOMAS, MOORE, and DONALDSON, JJ., concur.
PITTMAN, J., dissents, without writing.

. The record indicates that during the October 30, 2012, hearing on remand the attorney for the city stated that the city had "attached the affidavit of Agent John Walker” regarding the DEA’s practice and policies regarding federal forfeitures. The only affidavit of Walker found in the record on appeal is the same affidavit this court considered in reversing the summary judgment in favor of the city in Alexander.