WISE, Justice.
We granted the petition for a writ of certiorari filed by the City of Birmingham (“the City”) asking us to review the Court of Civil Appeals’ affirmance in City of Birmingham v. Alexander, 161 So.3d 1188 (Ala.Civ.App.2013), of a summary judgment in favor of the plaintiff, Ernest Alexander, in light of this Court’s decision in Ervin v. City of Birmingham, 137 So.3d 901 (Ala.2013). For the reasons set forth below, we reverse the judgment of the Court of Civil Appeals.

Facts and Procedural History

On June 4, 2009, the Jefferson County District Court (“the district court”) issued a search warrant for Alexander’s residence based on an affidavit by Officer Robert Walker of the Birmingham Police Department (“BPD”). The warrant was executed on June 5, 2009, by a joint task force of officers from the BPD’s narcotics unit and agents from the Federal Drug Enforcement Administration (“DEA”). During the search, officers recovered marijuana, *1196 $38,675 in cash, cocaine, a firearm, and digital scales. The cash was originally taken to the BPD’s facility, where a drug-detecting dog alerted on the cash. Detective John Walker of the BPD, who had also been deputized as a DEA task-force officer by the federal Department of Justice, then took the cash, sealed it in. a DEA evidence bag, and placed it in an overnight drop box at the DEA’s district office in Birmingham. Walker later took the cash to a bank, obtained a $38,675 cashier’s check payable to the United States Marshal, and gave the check to Federal Agent James Langnes.
In October 2009, a complaint for the civil forfeiture of the $38,675 was filed in the United States District Court for the Northern District of Alabama (“the federal court”). After being served with the complaint, Alexander failed to respond to the complaint or to take any action to reclaim the money. The federal court entered a default judgment of forfeiture as to the money on August 10, 2010.
On March 16, 2011, Alexander filed a complaint in the Jefferson Circuit Court (“the trial court”) seeking the return of the $38,675. He argued that the money had been seized pursuant to § 20-2-93, Ala. Code 1975, but that no state forfeiture or condemnation proceeding had been filed as required by § 20-2-93. The City filed a motion to dismiss or, in the alternative, for a summary judgment, arguing, in part, that the trial court did not have jurisdiction over this matter. Specifically, it contended that, at all relevant times, the money had been in the possession of federal agents who had participated in the search and who had delivered the cash to the DEA. Alternatively, the City argued that, even if the money had initially been seized by an officer of the BPD, the doctrine of adoptive forfeiture would be applicable in this case. Subsequently, Alexander filed a cross-motion for a summary judgment and argued that, because the money was seized by BPD officers pursuant to a warrant issued by the district court, exclusive jurisdiction over the cash vested in the district court; that, because the district court exercised jurisdiction first, all other courts and agencies were barred from assuming jurisdiction over the money; that the district court and the trial court had jurisdiction over the money; that the district court never relinquished its jurisdiction over the money; and that the federal forfeiture order was moot. After conducting a hearing, the trial court entered a summary judgment in favor of the City, and Alexander appealed that judgment to the Court of Civil Appeals.
On appeal in the Court of Civil Appeals, Alexander argued that, because the money was seized pursuant to a warrant issued by the district court, jurisdiction over the property was vested in the state court rather than the federal court. Thus, he argued, the federal court could not validly exercise in rem jurisdiction over the money to find that the money should be forfeited to the United States. The Court of Civil Appeals agreed with Alexander, stating:
“The record in this case indicates that jurisdiction of this matter vested in the state court upon the issuance of the warrant issued by the Jefferson District Court, see Garrett[ v. State], 739 So.2d [49,] 51-52 [(Ala.Civ.App.1999)]. The city failed to present sufficient evidence from which to find, as a matter of law, that the federal court had obtained jurisdiction over the money at issue or that the state court had been divested of jurisdiction in this case; thus the city failed to meet its burden of demonstrating that there were no genuine issues of material fact and that it was entitled to a judgment as a matter of law. There *1197 fore, we conclude that the circuit court erred in entering a summary judgment in favor of the city.”
Alexander v. City of Birmingham, 99 So.3d 1251, 1256 (Ala.Civ.App.2012)(“Alexander I ”), overruled by Payne v. City of Decatur, 141 So.3d 500 (Ala.Civ.App.2013). The Court of Civil Appeals then reversed the trial court’s judgment and remanded the case for proceedings consistent with its opinion. The City did not file an application for rehearing in the Court of Civil Appeals or petition for certiorari review in this Court. The Court of Civil Appeals issued a certificate of judgment in that case on July 18, 2012.
On August 17, 2012, Alexander filed a motion in the trial court reasserting his previously filed motion for a summary judgment. On October 4, 2012, the City filed its opposition to Alexander’s summary-judgment motion. The City argued that there were genuine issues of material fact as to Alexander’s interest in the property; that there were genuine issues of material fact as to the federal government’s involvement and approval of the federal forfeiture in the case at issue; that additional discovery would further define the relationship between the DEA, the United States Attorney’s Office, and the BPD; that the evidence was clear that Walker, the BPD, and others had acted in good faith during the forfeiture process; and that Alexander had been afforded due process to assert his interest in the cash. On October 30, 2012, the trial court conducted a hearing on Alexander’s summary-judgment motion. On November 5, 2012, the trial court entered an order in which it found as follows:
“City of Birmingham contends that the summary judgment should be denied on the following grounds; (1) there is an issue of fact as to whether the funds were illegally obtained; (2) Alabama Code 1975, § 15-5-14, allowed the seizing officer to retain the property for trial in federal court; and (3) the federal court had jurisdiction.
“The Court finds there is no evidence there was a decision by any state or local official that forfeiture was not possible under state law or that it was advantageous for them to transfer the matter to federal authorities. Therefore, pursuant to [Alexander I] this Court finds that the motion for summary judgment by Ernest Alexander is due to be and is granted.”
The trial court then entered a summary judgment in favor of Alexander for $38,675. After Alexander filed a motion to add interest to the amount recovered, the trial court granted the motion and amended its November 5, 2012, judgment to add interest. The City then appealed the trial court’s judgment to the Court of Civil Appeals.
While the City’s appeal was pending in the Court of Civil Appeals, this Court, on March 22, 2013, released its decision in Ervin v. City of Birmingham.
On July 19, 2013, the Court of Civil Appeals issued its decision in this case. In its opinion, the Court of Civil Appeals stated:
“Two of the issues the city raises in this appeal were addressed in Alexander [I], namely: (1) whether the state court had exclusive in rem jurisdiction over the property that was seized pursuant to the search warrant; and (2) whether federal adoption was perfected in this case. In Alexander [I], this court held that ‘[t]he city failed to present sufficient evidence from which to find, as a matter of law, that the federal court had obtained jurisdiction over the money at issue or that the state court had been divested of jurisdiction in this case.’ Alexander [I], 99 So.3d at 1256. Further *1198 more, after quoting from Green v. City of Montgomery, [55 So.3d 256 (Ala.Civ.App.2009)], and [Ex parte] Bingham, [129 So.3d 1017 (Ala.Civ.App.2012) ], regarding the procedure for a federal adoptive forfeiture, this court also determined that ‘there is no evidence indicating that the adoptive-seizure process was ever begun, much less brought to fruition.’ Id.
“ ‘ “ ‘[Ujnder the “law of the case” doctrine, “whatever is once established between the same parties in the same case continues to be the law of that case, whether or not correct on general principles, so long as the facts on which the decision was predicated continue to be the facts of the case.” ’ ” ’ Walden v. ES Capital, LLC, 89 So.3d 90, 107 (Ala.2011) (quoting Miller & Miller Constr. Co. v. Madewell, 920 So.2d 571, 572-73 (Ala.Civ.App.2005), quoting in turn other cases) (emphasis added). ‘ “ ‘The law-of-the-case doctrine provides that when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the same case, thereby hastening an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided.’ ” ’ Id. (quoting Martin v. Cash Express, Inc., 60 So.3d 236, 249 (Ala.2010), quoting in turn Belcher v. Queen, 39 So.3d 1023, 1038 (Ala.2009)); see also Blumberg v. Touche Ross & Co., 514 So.2d 922, 924 (Ala.1987)(same).
“The record indicates that, on remand, the parties did not submit new evidence for the trial court’s consideration. Furthermore, our holdings as to the issues decided in Alexander [I] remain the law of the case. The city did not seek a rehearing of our decision, and it did not file a petition for a writ of certiorari with our supreme court. Consequently, this court will not at this point reconsider those issues decided in Alexander [I],
[[Image here]]
“In its reply brief, the city argues that the supreme court’s holding in Ervin v. City of Birmingham, 137 So.3d 901 (Ala.2013), requires reversal of the trial court’s judgment in this case. In Ervin, our supreme court affirmed a summary judgment entered in favor of the city, holding that ‘Ervin’s action [seeking the return of cash seized in a federal forfeiture proceeding] amount[ed] to a collateral attack in state court on a final judgment entered by a federal court.... As the successor in title to the forfeited property, the [city was] entitled to the res judicata benefit of that final judgment.’ Ervin, 137 So.3d at 904. As discussed, however, this court has already held in this case that ‘[t]he city failed to present sufficient evidence from which to find, as a matter of law, that the federal court had obtained jurisdiction over the money at issue or that the state court had been divested of jurisdiction in this case.’ Alexander [I], 99 So.3d at 1256. The city failed to seek a rehearing or petition our supreme court for a writ of certiorari; therefore, that holding became the law of the case and is not subject to further appellate review.
“Furthermore, because of the procedural posture of this case, we find NHS Management, LLC v. Wright, 24 So.3d 1153 (Ala.Civ.App.2009), to be applicable. In that case, NHS Management, LLC (‘NHS’), operated a nursing home in which Viola Jenkins was a patient. Jenkins died while in the care of the nursing home, and Peter Wright, as the administrator of Jenkins’s estate, filed a complaint alleging numerous claims against NHS. Id. at 1154.
“NHS moved to compel arbitration. On April 3, 2007, the trial court held a hearing on the motion. Wright did not attend the hearing, and the trial court *1199 entered an order granting the motion to compel arbitration and staying all proceedings. Wright did not appeal from the order. Id.
“Several months later, the trial court ordered the parties to provide it with a written status update within 30 days or face dismissal of the action. Ultimately, Wright filed a motion asking the trial court to reconsider its order compelling arbitration in light of a May 4, 2007, supreme court decision that, Wright said, changed the law on which the trial court had based its prior decision. The trial court granted the ‘motion to reconsider’ and set aside its earlier order compelling arbitration. NHS appealed from that order. Id.
“This court treated the ‘motion to reconsider’ as a motion filed pursuant to Rule 60(b)(5), Ala. R. Civ. P., which allows a court to set aside a final judgment or order if a prior judgment on which it is based has been reversed or otherwise vacated, among other things. This court determined that Wright was not entitled to relief from the order compelling arbitration, noting that Rule 60(b)(5) ‘ “ ‘ “does not authorize relief from a judgment on the ground that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding.” ’ ” ’ Id. at 1156 (quoting Kupfer v. SCI-Alabama Funeral Servs., Inc., 898 So.2d 1153, 1157 (Ala.2004), quoting in turn other authorities).
“In this case, a certificate of judgment was issued as to this court’s judgment in Alexander [I] holding that the federal court did not have jurisdiction over the money seized in the search of Alexander’s residence. The city did not seek a rehearing of that decision, and it did not petition our supreme court for a writ of certiorari. The law this court relied on in reaching its holding was subsequently overruled or declared erroneous, but in another, unrelated proceeding, i.e., Ervin. Accordingly, on the authority of NHS Management and the cases cited therein, the city is not entitled to relief from this court’s holding in Alexander [I]. This conclusion is consistent with the law-of-the-case doctrine.”
City of Birmingham v. Alexander, 161 So.3d 1188, 1191-94 (Ala.Civ.App.2013) (“Alexander II”)(footnote omitted).
The City petitioned this Court for a writ of certiorari. In its petition, the City appears to argue that the Court of Civil Appeals’ application of the law-of-the-case doctrine to this case conflicted with prior Alabama caselaw.

Discussion

The City argues that the Court of Civil Appeals erroneously applied the law-of-the-case doctrine in this case.
In Ex parte Discount Foods, Inc., 711 So.2d 992 (Ala.1998) (“Discount Foods I”), this Court, in a plurality opinion, held that the tort claims asserted by Discount Foods, Inc., against the defendants could not be arbitrated because the arbitration provision in that case could not be construed to encompass Discount Foods’ intentional-tort claims. Subsequently, in Ex parte Discount Foods, Inc., 789 So.2d 842 (Ala.2001)(“Discount Foods II”), this Court concluded that this Court’s opinion in Discount Foods I had been predicated on a wrongly decided plurality opinion. In footnote 4 of the opinion in Discount Foods II, this Court explained:
“This Court is not required under the doctrine of ‘law of the case’ to adhere to the decision in Discount Foods I. Generally, the law-of-the-case doctrine provides that when a court decides upon a rule of law, that rule should continue to *1200 govern the same- issues in subsequent stages in the same case. The purpose of the doctrine is to bring an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided. See Murphy v. FDIC, 208 F.3d 959 (11th Cir.2000); see, also, Blumberg v. Touche Ross & Co., 514 So.2d 922 (Ala.1987). However, the law-of-the case doctrine does not in all circumstances require rigid adherence .to rulings made at an earlier stage of a case. The doctrine directs a court’s discretion; it does not limit a court’s power. The law-of-the-case doctrine is one of practice or court policy, not of inflexible law, and it will be disregarded when compelling circumstances call for the redeter-mination of a point of law on a prior appeal; and this is particularly true when the court is convinced that its prior decision is clearly erroneous or where an intervening or contemporaneous change in the law has occumd by an overruling of former decisions or when such a change has occurred by new precedent established by controlling authority. See State v. Whirley, 530 So.2d 861 (Ala.Crim.App.1987), rev’d on other grounds, 530 So.2d 865 (Ala.1988); Callahan v. State, 767 So.2d 380 (Ala.Crim.App.1999); Murphy v. FDIC, supra; United States v. Escobar-Urrego, 110 F.3d 1556 (11th Cir.1997); Heathcoat v. Potts, 905 F.2d 367 (11th Cir.1990).”
789 So.2d at 846 n. 4 (emphasis added).
“This Court recently addressed the law-of-the-case doctrine in Belcher v. Queen, 39 So.3d 1023 (Ala.2009):
“ ‘The law-of-the-case doctrine provides that when a court decides upon a rule of law, that rule should continue to govern the same issues in subsequent stages in the same case, thereby hastening an end to litigation by foreclosing the possibility of repeatedly litigating an issue already decided. Ex parte Discount Foods, Inc., 789 So.2d 842, 846 n. 4 (Ala.2001). The law-of-the-case doctrine may be disregarded if the court is convinced its prior decision was clearly erroneous or there has been an intervening change in the law.... ’
“39 So.3d at 1038.”
Martin v. Cash Express, Inc., 60 So.3d 236, 249 (Ala.2010) (some emphasis added). Additionally,
“[t]he general rule is that a case pending on appeal will be subject to any change in the substantive law. The United States Supreme Court has stated, in regard to federal courts that are applying state law: ‘[T]he dominant principle is that nisi prius and appellate tribunals alike should conform their orders to the state law as of the time of the entry. Intervening and conflicting decisions will thus cause the reversal of judgments which were correct when entered.’ Vandenbark v. Owens-Illinois Glass Co., 311 U.S. 538, 543, 61 S.Ct. 347, 85 L.Ed. 327 (1941). See also United States v. Schooner Peggy, 1 Cranch 103, 5 U.S. 103, 2 L.Ed. 49 (1801). Thus, courts are required to apply in a particular case the law as it exists at the time it enters its final judgment:
“ ‘[I]t has long been held that if there is a change in either the statutory or decisional law before final judgment is entered, the appellate court must “dispose of [the] case according to the law as it exists at the time of final judgment, and not as it existed at the time of the appeal.” This rule is usually regarded as being founded upon the conceptual inability of a court to enforce that which is no longer the law, even though it may have been the law *1201 at the time of trial, or at the time of the prior appellate proceedings.’
“Note, Prospective Overruling and Retroactive Application in the Federal Courts, 71 Yale L.J. 907, 912 (1962) (quoting Montague v. Maryland, 54 Md. 481, 488 (1880)).”
Alabama State Docks Terminal Ry. v. Lyles, 797 So.2d 432, 438 (Ala.2001).
Finally, in Norandal U.S.A., Inc. v. Graben, 133 So.3d 386, 390 (Ala.Civ.App.2010), the Court of Civil Appeals stated:
“Although we recognize that an intervening change in the law may warrant deviation from the law-of-the-case doctrine, see Ex parte Discount Foods, Inc., 789 So.2d 842, 846 n. 4 (Ala.2001)[Discount Foods II ], the change generally must be such that the original decision is now clearly erroneous due to reliance on the old law. See Wright et al., Federal Practice & Procedure; Jurisdiction 2d § 4478 n. 59 (2002).”
After the Court of Civil Appeals decided Alexander I, and while the present case was pending on appeal in the Court of Civil Appeals, this Court issued its opinion in Ervin, supra. In Ervin, Ervin filed a complaint in an Alabama state court seeking the return of property that had been seized pursuant to a warrant issued by a state court and that had been the subject of forfeiture proceedings in a federal district court. Ervin had previously waived any challenges in the federal district court proceedings. In his subsequent state court complaint seeking the return of property, Ervin
“alleg[ed] that it had been seized under § 20-2-93, Ala.Code 1975, and that forfeiture proceedings should have occurred in accordance with that statute. Ervin alleged that, because such forfeiture proceedings had never been instituted, he was entitled to the return of the subject property.”
Ervin, 137 So.3d at 904 (footnote omitted). After the City filed a motion to dismiss or for a summary judgment on the ground that the property had been forfeited through the federal district court proceedings, Ervin filed a cross-motion for a summary judgment. In his cross-motion for a summary judgment, Ervin argued that the federal district court’s judgment was void because that court never acquired jurisdiction over the subject property. The trial court granted the City’s motion for a summary judgment, and Ervin appealed to this Court.
On appeal, this Court noted:
“In the present action, Ervin contends that the cash was initially seized by the Birmingham Police Department (‘the BPD’), not by the Drug Enforcement Agency (‘the DEA’), and that the cash was subsequently transferred by ‘unknown Birmingham police officers ... to the DEA to commence forfeiture or condemnation proceedings’ in the federal court. Ervin alleges that neither the Jefferson County District Attorney nor the Alabama Attorney General was notified of the seizure of the cash by the BPD. Ervin also emphasizes that the warrant to search his vehicle was issued by a Jefferson Circuit Court judge.”
Ervin, 137 So.3d at 903. This Court addressed Ervin’s claims as follows:
“Ervin’s action amounts to a collateral attack in state court on a final judgment entered by a federal court. Ervin asserts a right to property given to the State by the federal government. The federal government, however, obtained ownership of that property as against Ervin pursuant to the 2008 judgment of the federal district court. Ervin filed no postjudgment motions challenging that judgment, nor did he appeal from it. To the contrary, as he stated in his motion *1202 to withdraw his claim for the cash filed in the federal court, Ervin ‘consent[ed] to the forfeiture of the subject property.’ Accordingly, the judgment of the federal district court became a final judgment. As the successor in title to the forfeited property, the State is entitled to the res judicata benefit of that final judgment. Henderson v. Scott, 418 So.2d 840, 841-42 (Ala.1982) (holding that a successor in interest is entitled to res judicata benefit of prior judgment awarding property to its predecessor).
“Ervin nevertheless contends that the cash was seized pursuant to a search warrant issued by a State judge under the auspices of § 20-2-93, Ala.Code 1975, that State law-enforcement officials initially seized the cash, and that they improperly transferred the cash to federal officials. Even if all these contentions were correct, they amount only to an attack on the authority of the federal district court to exercise jurisdiction over the res in an in rem action, not an attack on the subject-matter jurisdiction of the federal court over a forfeiture action brought under federal law. As such, they come too late and are being advanced in the wrong court. See Porsche Cars North America, Inc. v. Porsche.net, 302 F.3d 248, 256 (4th Cir.2002) (distinguishing between objections to subject-matter jurisdiction and objections to a court’s exercise of jurisdiction over the res in an in rem action, and explaining that, as with in personam jurisdiction, ‘in ... civil forfeiture cases, for years courts have held that objections to in rem jurisdiction may be waived’ and citing cases in support); United States v. Nineteen Thousand Eight Hundred Fifty Five ($19,855.00) Dollars in United States Currency (No. 2:12-CV-146-WKW, Nov. 19, 2012) (not selected for publication in F.Supp.3d) note 6 and accompanying text (M.D.Ala.2012) (explaining that objections to in rem jurisdiction may be waived if not timely asserted). See also Edney v. City of Montgomery, 960 F.Supp. 270, 273 (M.D.Ala.1997):
“ ‘After the city seized the currency at issue, the DEA adopted the city’s seizure by authorizing the city to seize the money on behalf of the DEA and to transfer the money to the DEA. “[U]nder the ‘adoptive forfeiture’ doctrine, the United States’ adoption of the State’s seizure of [the plaintiffs’] cash has the same effect as if the government had originally seized the currency.” U.S. v. $119,000 in U.S. Currency, 793 F.Supp. 246, 249 (D.Haw.1992). That is, “[o]nce the federal government has taken custody of property under 21 U.S.C. § 881, such property is not repleviable, subject only to orders from the court having jurisdiction over the forfeiture proceeding.” Id. And it is the federal district court that has original jurisdiction of a federal forfeiture action. 28 U.S.C. § 1355(a).’
“(Emphasis added.)”
Ervin, 137 So.3d at 905.
The facts in this case are substantially similar to the facts in Ervin. Additionally, in this case, Alexander argued that the default judgment in the federal forfeiture proceeding was void because the district court first exercised jurisdiction over the property in question, which was seized pursuant to a search warrant issued by the district court. Ervin raised the same argument in his case. However, in Ervin, this Court rejected Ervin’s arguments and held that Ervin’s action in that case amounted to a collateral attack in a state court on a final judgment entered by a federal court; that Ervin’s arguments amounted only to an attack on the authority of the federal district court to exercise *1203 jurisdiction over the res in an in rem action rather than an attack on the subject-matter jurisdiction of the federal court over a federal forfeiture action; and that Ervin’s claims came too late and were filed in the wrong court. Based on this Court’s intervening decision in Ervin, the Court of Civil Appeals’ holding in Alexander I that the federal court did not have jurisdiction to enter the default judgment in the federal forfeiture case was clearly erroneous. In fact, in Payne v. City of Decatur, supra, which was decided almost three months before the decision in the present case was released, the Court of Civil Appeals stated:
“In order to reconcile our recent case-law with the decision in Ervin, we disavow the rationale of Bingham and we accept the City’s invitation to overrule Alexander v. City of Birmingham, 99 So.3d 1251 (Ala.Civ.App.2012) [Alexander I]. In Alexander [I], the claimant filed an action in the Jefferson Circuit Court on March 26, 2011, seeking the return of cash that had been seized from him and transferred to the DEA by officers of the Birmingham Police Department. The claimant acknowledged that previously, on August 10, 2010, a federal district court had entered a final judgment forfeiting the cash to the United States, but, he argued, the federal court had no authority to exercise in rem jurisdiction because the state court had had preexisting in rem jurisdiction by virtue of its having issued the warrant for the search whose execution resulted in the seizure of the cash. The circuit court entered a summary judgment in favor of the City of Birmingham. A majority of this court concurred to reverse the judgment, concluding that the municipality had ‘failed to present sufficient evidence from which to find, as a matter of law, that the federal court had obtained jurisdiction over the money at issue or that the state court had been divested of jurisdiction.’ 99 So.3d at 1256. That conclusion erroneously permitted the claimant’s ‘collateral attack in state court on a final judgment entered by a federal court’ and did not give the City of Birmingham ‘the res judicata benefit’ of the federal court’s final judgment of forfeiture. See Ervin, 137 So.3d at 904.”
Payne, 141 So.3d at 504 (emphasis added). Thus, in its prior decision in Payne, the Court of Civil Appeals also recognized that its decision in Alexander I was erroneous and overruled that decision.
In its opinion in the present case, the Court of Civil Appeals relied heavily on its prior decision in NHS Management, LLC v. Wright, 24 So.3d 1153 (Ala.Civ.App.2009), in determining that the City was not entitled to relief from the Court of Civil Appeals’ holding in Alexander I. In NHS, Viola Jenkins was a patient at a nursing home operated by NHS Management, LLC, and Northport Health Services, Inc., d/b/a Tallassee Health and Rehabilitation, LLC. A family member who did not have power to represent Jenkins in any legal capacity signed an admission agreement that included an arbitration agreement. Subsequently, Jenkins died while in the nursing home. Peter Wright, the administrator of Jenkins’s estate, sued NHS Management, LLC, Northport Health Services, Inc., d/b/a Tallassee Health and Rehabilitation, LLC, and Ouida Gandy (hereinafter collectively referred to as “NHS”). On August 2, 2006, NHS moved the trial court to compel arbitration, and to stay the proceedings. Ultimately, on April 3, 2007, the trial court entered an order granting NHS’s motion to compel arbitration and staying all the proceedings. Wright did not appeal that order. However, on December 14, 2007, Wright filed a Rule 60(b), Ala. R. Civ. P., motion seeking relief from the order granting the motion to compel *1204 arbitration, in which he argued that this Court’s decision in Noland Health Services, Inc. v. Wright, 971 So.2d 681 (Ala.2007), changed the law upon which the trial court had based its decision. The trial court granted Wright’s motion.
On appeal, NHS argued that, because Wright did not appeal the April 3, 2007, order compelling arbitration, the trial court erred when it granted Wright’s Rule 60(b) motion and set aside that order. The Court of Civil Appeals interpreted Wright’s motion as a motion for relief from an order pursuant to Rule 60(b)(5), Ala. R. Civ. P. Rule 60(b)(5) provides, in pertinent part:
“On motion and upon such terms as are just, the court may relieve a party or a party’s legal representative from a final judgment, order, or proceeding for the following reasons: ... (5) the judgment has been satisfied, released, or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment should have prospective application.... ”
In addressing NHS’s argument, the Court of Civil Appeals stated:
‘“In Patterson v. Hays, 623 So.2d 1142, 1145 (Ala.1993), [the Alabama Supreme] Court stated:
“ ‘ “Although relief from a judgment may be granted under Rule 60(b)(5) if a prior judgment upon which the judgment is based has been reversed or otherwise vacated, or if it is no longer equitable that the judgment should have prospective application, ‘[Rule 60(b)(5) ] does not authorize relief from a judgment on the ground that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding.’ 7 Jerome Wm. Moore, Moore’s Federal Practice par. 60.26(3)(1991).”
“ ‘623 So.2d at 1145. See also City of Daphne v. Coffey, 410 So.2d 8, 10 (Ala.1982) (“Rule 60 is not a substitute for an appeal.”); McLeod v. McLeod, 473 So.2d 1097, 1098 (Ala.Civ.App.1985) (“We first note that Rule 60(b) is an extreme remedy to be used only under extraordinary circumstances.”); Marsh v. Marsh, 338 So.2d 422, 423 (Ala.Civ.App.1976) (“The cases applying Rule 60(b), though seeking to accomplish justice, have indicated careful consideration for finality of judgment[s]. In that regard, they have required the mov-ant to show good reason for failure to take appropriate action sooner ... and to show a good claim or defense.”).’
“Kupfer v. SCI-Alabama Funeral Servs., Inc., 893 So.2d 1153, 1156-57 (Ala.2004). See also Harris v. Martin, 834 F.2d 361, 364 (3d Cir.1987) (‘[T]he “prior judgment” clause of Rule 60(b)(5)[, Fed.R.Civ.P.,] “does not contemplate relief based merely upon prec-edential evolution.” Mayberry [v. Maroney ], 558 F.2d [1159,] 1164 [ (3d Cir.1977) ]; see also 11 C. Wright & A. Miller, Federal Practice and Procedure § 2863 (1973); Comment, Federal Rule of Civil Procedure 60(b): Standards for Relief from Judgments Due to Changes in Law, 43 U. Chi. L.Rev. 646, 652-56 (1976). Its operation “is limited to cases in which the present judgment is based on the prior judgment in the sense of res judicata or collateral estoppel.” Marshall [v. Board of Ed. of Bergenfield, N.J.], 575 F.2d [417,] 424 [ (3d Cir.1978) ] (quoting 11 C. Wright & A. Miller, Federal Practice and Procedure § 2863 (1973)).’).
[[Image here]]
*1205 “In this case, as in Kupfer, Wright did not appeal the trial court’s order compelling arbitration, and the Alabama Supreme Court issued its opinion in Noland [Health Services, Inc. v. Wright], 971 So.2d 681 (Ala.2007), before the time had run for Wright to file a notice of appeal. Therefore, Wright cannot now use Rule 60(b)(5) to substitute for an appeal. See [Ex parte] Dowling, 477 So.2d [400,] 404 [ (Ala.1985) ] (‘A motion to reconsider cannot be used as a substitute for an appeal.’). Moreover, the Alabama Supreme Court’s decision in Noland does not justify the trial court’s grant of Wright’s Rule 60(b)(5) motion. See Patterson v. Hays, 623 So.2d 1142, 1145 (Ala.1993) (“‘[Rule 60(b)(5)] does not authorize relief from a judgment on the ground that the law applied by the court in making its adjudication has been subsequently overruled or declared erroneous in another and unrelated proceeding.” ’ (quoting Jerome Wm. Moore, Moore’s Federal Practice ¶ 60.26(3) (1991))). Therefore, the trial court exceeded its discretion when it granted Wright’s Rule 60(b) motion and set aside its prior order compelling arbitration.”
24 So.3d at 1155-57.
In NHS, Wright did not appeal from the trial court’s order compelling arbitration, so that order became a final order for res judicata purposes. Because NHS involved a final judgment, Wright filed a Rule 60(b)(5) motion. It is clear that the Court of Civil Appeals’ decision in NHS was based on cases that limited the availability of relief under Rule 60(b)(5). However, this case does not involve an appeal from the denial of a Rule 60(b)(5) motion. Rather, this case involves a timely appeal from the trial court’s order granting Alexander’s summary-judgment motion that, for res judicata purposes, was not yet final. Thus, NHS is clearly distinguishable from this case. Additionally, this Court has specifically stated that the law of the case will be disregarded in situations where the prior determination was clearly erroneous or where there has been an intervening change in law., See Discount Foods II, supra.
Based on the intervening change of law set forth in Ervin, the Court of Civil Appeals’ decision in Alexander I was clearly erroneous. Therefore, the Court of Civil Appeals erred when it relied on the law-of-the-case doctrine and on its prior decision in NHS in determining that its decision in Alexander I was not subject to appellate review and that the City was not entitled to relief based upon this Court’s decision in Ervin. For these reasons, the Court of Civil Appeals erred when it in affirmed the trial court’s summary judgment in favor of Alexander. Accordingly, we reverse the Court of Civil Appeals’ judgment and remand this case for proceedings consistent with this opinion.[1]
REVERSED AND REMANDED.
STUART, BOLIN, PARKER, SHAW, and MAIN, JJ., concur.
MURDOCK, J., concurs specially.
MOORE, C.J., dissents.

. Based on our disposition of this issue, we pretermit discussion of the remaining arguments raised in the briefs of the parties.