# UNITED STATES OF AMERICA
## v.
## LUTHER THOMAS, Appellant

No. 02-2288

United States Court of Appeals for the Third Circuit

February 12, 2003

DOUGLAS J. BEEVERS (Argued), Assistant Federal Public Defender, St. Thomas, USVI, *Counsel for Appellant*

JOYCELYN HEWLETT (Argued), Assistant U.S. Attorney, St. Thomas, USVI, *Counsel for Appellee*

SCIRICA, ALITO, and RENDELL, *Circuit Judges*

## OPINION OF THE COURT

Appellant Luther Thomas contests the administrative forfeiture of $1,049 in cash. After unsuccessfully moving for a return of property pursuant to Federal Rule of Criminal Procedure 41(e), Thomas argued

that the government's failure initially to assert jurisdiction over the res rendered the forfeiture invalid. The District Court found no jurisdictional deficiencies, and we affirm.

## I.

On May 25, 2000, the Drug Enforcement Administration obtained from the District Court a warrant to search Thomas's home. Officers seized $1,049 in cash pursuant to that warrant and arrested Thomas for possessing a small amount of cocaine base (crack) with intent to distribute. On June 1, a DEA task-force agent and Virgin Islands police officer converted the currency into a cashier's check and delivered the instrument to the United States Marshals' office. The DEA initiated administrative forfeiture proceedings on the money while Thomas awaited trial on the drug charges.

The DEA mailed a notice of seizure to Thomas at three different addresses and published notice in the Virgin Islands Daily News and the Wall Street Journal. Two of the mailed notices were returned to sender, and the DEA delivered another notice to Thomas granting him an additional 20 days to contest the forfeiture judicially by filing a claim and posting bond, as required by 19 U.S.C. § 1609(a). Thomas neglected to do so but moved the District Court for the property's return pursuant to Rule 41(e) of the Federal Rules of Criminal Procedure. The Magistrate Judge denied that motion, and the DEA declared the money forfeited on December 7, 2000.

Thomas then attempted to seek the return of the money administratively by petitioning the DEA for remission of forfeiture. *See* 28 C.F.R. § 9.5 *et seq.* In his petition, Thomas alleged that the $1,049 represented legitimate income from the sale of assorted knickknacks. While the petition was pending, the jury found Thomas not guilty of all of the criminal charges against him. On June 4, 2001, an attorney from the DEA's asset-forfeiture division informed Thomas that he had "failed to provide sufficient documentation showing a legitimate origin for the forfeited currency." The DEA's letter stated that a claimant alleging forfeited money to be legitimate business proceeds must provide "credible, verifiable documentation evidencing the transaction, such as bills of sale."

Thomas moved for reconsideration of his motions in both the administrative and judicial fora. Before the District Court, Thomas

emphasized a different basis for his claim, arguing that the DEA never properly asserted in rem jurisdiction over the seized property, thereby undermining the forfeiture. For this argument, Thomas relied principally on *Scarabin v. DEA*, 966 F.2d 989 (5th Cir. 1992). The District Court ruled, citing *United States v. McGlory*, 202 F.3d 664, 670 (3d Cir. 2000), that it had no jurisdiction to adjudicate a Rule 41(e) motion for the return of property "once the government has initiated administrative forfeiture proceedings and the property is no longer the subject of an ongoing criminal proceeding." However, acknowledging McGlory's limited exception for a situation in which a Rule 41(e) movant alleges that the forfeiture proceedings failed to satisfy statutory and due-process requirements, *see id.*, the District Court reached Thomas's *Scarabin* argument. It concluded that because the $1,049 "was at all times in the hands of the federal government," *Scarabin* was inapposite, and it therefore denied Thomas's motion. This appeal followed.

## II.

In *Scarabin*, the Fifth Circuit considered a challenge to the administrative forfeiture of $12,360 in cash. Scarabin operated a fuel dock and marine supply business at a marina in Plaquemines Parish, Louisiana. *See Scarabin v. DEA*, 919 F.2d 337, 338 (5th Cir. 1990) (hereinafter *Scarabin I*).[1] Acting pursuant to a warrant issued by a Louisiana state court, personnel of the Plaquemines Sheriff's Department and the Drug Enforcement Administration (DEA) raided the marina and found two marijuana cigarette butts on the premises but not in the vicinity of Scarabin. *Id.* In addition, the Sheriff seized $12,360 from Scarabin. *Id.* Scarabin was originally charged with criminal offenses, but these charges were dismissed. *Id.* The seized funds, however, were forfeited in a DEA administrative proceeding. *Id.* Scarabin pursued remission of forfeiture via administrative channels but was rebuffed due to a technicality. *Id.* In an opinion issued in 1990, the Fifth Circuit acknowledged that it lacked jurisdiction to review the denial of remission but remanded the case to the DEA with the following suggestion: "[This] is the perfect case for big government to be big hearted and big enough

---

[1] For clarity's sake we refer to the final *Scarabin* decision at 966 F.2d 989 (5th Cir. 1992), on which Thomas relies in this case, simply as *Scarabin*.

to return ill-gotten gains to the rightful owner rather than unjustly enrich itself on the basis of a technical 'gotcha.'" *Scarabin I*, 919 F.2d at 339.

By the time the case returned to the Fifth Circuit in 1992, additional facts had emerged concerning the treatment of the seized cash. Unbeknownst to the Court during consideration of *Scarabin I*:

> [A] mere three days after [its] search of the Parish marina and seizure of Scarabin's funds, the Sheriff's Office bought a cashier's check using Scarabin's $12,360. [It] did so without the knowledge, much less the authority, of the state court. The cashier's check was then handed over to the DEA for civil forfeiture under federal law. ... The DEA proceeded to forfeit administratively the $12,360 from the cashier's check received from the Sheriff's Office, purporting to forfeit the funds actually seized from Scarabin. ... The DEA gave the Sheriff's Office $11,124 (or 90% of $12,360) under a federal statute that allows the DEA to return forfeited property to state or local law enforcement agencies that have participated directly in the seizure or forfeiture of that property.

*Scarabin*, 966 F.2d at 991.

The Fifth Circuit concluded that "the administrative forfeiture of which the DEA informed Scarabin [was] a non-entity." *Id.* at 995. The Fifth Circuit stated that it was "astonished by the DEA's belated revelation that it never possessed or controlled Scarabin's $12,360 in cash, the res at issue in this case," and the Fifth Circuit noted that a federal agency undertaking an administrative forfeiture "must have physical control over the property to be forfeit." *Id.* at 993. The panel then reasoned that "as the DEA by its own admission never had control over Scarabin's $12,360, it could not lawfully have found the property forfeit under the rules of in rem forfeiture." *Id.* Moreover, the panel held that, even if the DEA had possessed the actual res, the DEA would still have lacked in rem jurisdiction because "Scarabin's $12,360 was never out of the legal control of the state court and thus was never in the possession of the federal government." *Id.* at 995. In reaching this conclusion, the Fifth Circuit relied on a Louisiana statute that provided as follows:

> When property is seized pursuant to a search warrant, it shall be retained under the direction of the judge. If seized property is not to

be used as evidence or is no longer needed as evidence, it shall be disposed of according to law, under the direction of the judge.

LA. C. CR. P. ART. 167. The Court reasoned that, under this statute, "the state court's control terminates when, but only when, the seized property is disposed of according to law." *Scarabin*, 966 F.2d at 993. It held, accordingly, that "[a] federal agency cannot obtain jurisdiction over the res—and thus cannot find the res administratively forfeit—when a state court obtains jurisdiction first and never relinquishes that jurisdiction." *Id.* (citing, *e.g.*, *Penn Gen'l Casualty Co. v. Pennsylvania*, 294 U.S. 189, 79 L. Ed. 850, 55 S. Ct. 386 (1935)).

## III.

The Fifth Circuit's opinion in *Scarabin* may be read as holding that the DEA lacked in rem jurisdiction over the seized cash for two separate reasons: first, because the state court retained jurisdiction under state law and, second, because the DEA never actually possessed the cash but instead merely obtained a cashier's check from the local sheriff. Thomas appears to rely on both propositions. He argues, first, that the District Court, not the DEA, had possession of the seized cash in this case, since the cash was seized pursuant to a warrant issued by the District Court and, second, that possession of the res was lost when it was converted into a cashier's check. We address each argument in turn.

## A.

■ Although Thomas contends that the District Court, not the DEA, possessed the res at issue here, he cites no legal authority that supports this conclusion. In *Scarabin*, as noted, the warrant was issued by a Louisiana state court, and a Louisiana statute provided that the seized property was to remain under the direction of the state court that issued the warrant. We disagree with Thomas's argument that Federal Rule of Criminal Procedure 41 operates analogously. The Rule gives a claimant some rights but does not provide that the warrant-issuing court, as opposed to the executive branch agency making the seizure, retains the res. *Compare* FED. R. CRIM. P. 41(d), (e) with LA. C. CR. P. ART. 167. In the absence of a statutory provision like the one invoked in *Scarabin*, we decline to hold that, for purposes of in rem jurisdiction, property seized under a federal warrant rests within the exclusive possession of the

668

warrant-issuing court rather than the executive-branch agency that executes the warrant and actually seizes the property. *See United States v. Certain Real Property*, 986 F.2d 990, 994-95 (6th Cir. 1993); *United States v. $12,390*, 956 F.2d 801, 805-06 (8th Cir. 1992); *United States v. One 1986 Chevrolet Van*, 927 F.2d 39, 44-45 (1st Cir. 1991).

*Scarabin* is also distinguishable from the present case on the ground that it involved a seizure by a state officer under a state warrant. The District Court considered this distinction dispositive when it ruled that because a federal search warrant authorized the seizure of Thomas's $1,049, the DEA, as another arm of the federal government, could properly assert jurisdiction over the res. Although we do not rely exclusively on this ground, we agree with the District Court that *Scarabin* should not be extended to cases where property seized by a federal officer under a federal warrant is forfeited in a federal administrative proceeding.

### B.

We also reject Thomas's argument that the DEA relinquished possession of the res when it converted the cash to a cashier's check. In making this argument, Thomas relies on the rule stated in *The Brig Ann*, 13 U.S. (9 Cranch.) 289, 290, 3 L. Ed. 734 (1815), and reaffirmed in *Republic Nat'l Bank of Miami v. United States*, 506 U.S. 80, 121 L. Ed. 2d 474, 113 S. Ct. 554 (1992), that judicial cognizance of a forfeiture in rem is defeated "if a seizure be completely and explicitly abandoned" before forfeiture proceedings are instituted. *Id.* at 86-87 (quoting *The Brig Ann*, 13 U.S. at 290). Under this rule, asserting jurisdiction over a res requires actual physical control over the res, and an abandonment of physical control undermines in rem jurisdiction. "The Brig Ann stands for nothing more than this." *Republic Nat'l Bank*, 506 U.S. at 87. In order for this rule to apply to the present case, the act of converting cash to a check must constitute a "complete[ ] and explicit[ ] abandonment" of the res. *The Brig Ann*, 13 U.S. at 290. To the extent that *Scarabin* supports that result, however, it is in tension with approaches to the forfeiture of cash endorsed by other Circuits.

It behooves authorities to preserve seized money in the form in which they seized it when they intend to use it as physical evidence in a trial. Typical situations are when cash traded for drugs contains trace residue of the narcotics involved or when the serial numbers on the bills

669

implicate the accused. However, when no legal significance attaches to the bills themselves, some courts favor a departure from literal application of in rem jurisdiction. In *Madewell v. Downs*, 68 F.3d 1030, 1042 n.14 (8th Cir. 1995), the Eighth Circuit refused to follow *Scarabin*, holding that "currency, cashier's checks, and bank deposits are simply surrogates for each other, and in modern society are certainly regarded as 'fungible,' when the question is ownership of the funds each represents." Similarly, the Ninth Circuit rejected the argument that when "currency was exchanged for a cashier's check, the currency, which is the res, 'disappeared into the banking system and is no longer identifiable.'" *United States v. $46,588.00 in United States Currency*, 103 F.3d 902, 905 (9th Cir. 1996). Citing Madewell, it held that "the cashier's check was an appropriate, fungible surrogate for the seized currency." *Id.*

■ This approach accords comfortably with the jurisprudence of civil forfeiture. Historically, forfeiture proceeded from the legal fiction that property used in the commission of a crime itself offends the law. *See, e.g., The Palmyra*, 25 U.S. (12 Wheat.) 1, 14, 6 L. Ed. 531 (1827). The forfeited res, as a legal entity, is identical with the physical article when the property is, for example, a sea vessel, an automobile, or a firearm. Currency, however, differs substantially from such objects. Paper currency, in the form of the Federal Reserve Note, is defined as an "obligation[ ] of the United States" that may be "redeemed in lawful money on demand." 12 U.S.C. § 411 (2002). These bills are not "money" per se but promissory notes supported by the monetary reserves of the United States. When an individual engages in a criminal transaction with paper currency, although the individual certainly uses the notes to accomplish the criminal end, the currency's monetary value funds the transaction and is also an appropriate target of forfeiture. This result also follows from the fact that an individual who uses legal documents representing ownership of land to raise funds for a criminal purpose renders the land itself subject to forfeiture. *See United States v. Rd 1, Box 1, Thompsontown*, 952 F.2d 53 (3d Cir. 1991). It would be absurd, in that case, to suppose that forfeiture could attach only to the document and not to the legal interests represented by that document. We therefore hold that the DEA did not abandon the res when it converted the currency to a cashier's check.

## IV.

In sum, we hold that the DEA properly exercised in rem jurisdiction over the $1,049 seized from Thomas. As the District Court correctly recognized in citing *McGlory*, no other issue that would normally go to the merits of a Rule 41(e) motion may be considered or adjudicated at this time. We therefore affirm the judgment of the District Court.