DONALDSON, Judge.
Darryl T, Gray filed a complaint against the City of Opelika (“the City”) and Benjamin Carswell in the Lee Circuit Court (“the trial court”) seeking the return of property formerly in his possession that had been seized by officers of the City of Opelika Police Department (“OPD”), including Carswell. The City and Carswell submitted documentary evidence showing that federal adoption of the seizure had occurred before Gray had filed his complaint in the trial court, and they moved to dismiss the action based on a lack of in rem jurisdiction. The motion to dismiss was granted, and Gray appeals. We affirm the judgment.

Facts and Procedural History

On August 13, 2014, Gray was driving on Interstate 85 when Carswell, a police officer of the OPD, stopped him for a traffic violation. Documents in the record show that Gray consented to a search of the motor vehicle he was driving. A K-9 unit searched the car for narcotics, and the dog alerted to a center console where a ziplock plastic bag with bundles of United States currency (“the currency”) was located. The police officers seized the currency *433 pursuant to § 20-2-93(b), Ala.Code 1975.[1] On September 2, 2014, the OPD transferred the currency, which had been converted into a cashier’s check, to the United States Drug Enforcement Administration (“the DEA”) in order for federal administrative forfeiture proceedings to be commenced. See 21 U.S.C. § 881 (providing for federal forfeitures of seized property); Cavaliere v. Town of N. Beach, 101 Md. App. 319, 322, 646 A.2d 1058, 1059 (1994) (describing federal administrative forfeiture proceedings). The record does not indicate that Gray filed a claim for the return of the property with any federal agency or court at any time.
On October 20, 2014, Gray filed a complaint in the trial court against the City and Carswell seeking the return of approximately $33,600, the amount of the currency he alleged had been seized. Gray alleged that he was entitled to the return of the currency because the State of Alabama had not promptly instituted a forfeiture proceeding as required by § 20-2-93(c)(re-quiring promptness when instituting state forfeiture proceedings). On December 4, 2014, the City and Carswell filed a motion to dismiss the complaint, arguing that federal jurisdiction had exclusively attached to the currency through federal adoption of the seizure before Gray filed his complaint in the trial court. In support of their motion, the City and Carswell submitted a form signed by Gray indicating his consent to a search of the motor vehicle on August 13, 2014, and a chain-of-custody form showing a transfer of the currency in the form of a cashier’s check from Carswell’s custody to the DEA before Gray filed his complaint in the trial court.
Gray filed a response to the motion to dismiss, arguing that the trial court had acquired jurisdiction when the currency was seized, that no proof of a federal adoptive seizure had been provided, that an administrative forfeiture by the DEA did not confer in rém jurisdiction to a federal court, and that the receipt of a cashier’s check converted from the currency did not constitute actual possession of the currency as required for federal in rem jurisdiction.
The record does not indicate that the trial court ruled on the motion to dismiss filed on December 4, 2014, by the City and Carswell. On April 24, 2015, the City and Carswell filed a renewed motion to dismiss, again arguing that federal jurisdiction had attached to the currency. In addition to the documents submitted with their original motion to dismiss, the City *434 and Carswell submitted a report describing the search of Gray’s motor vehicle and a federal declaration-of-forfeiture certificate declaring the currency forfeited. The certificate indicated that an adoptive seizure had occurred on August 27, 2014, that notice to known parties of interest had been sent, that notice of the seizure had been published, and that no claim to the currency had been filed with the DEA within 30 days of the published notice.
On May 6, 2015, the trial court entered an order dismissing the action for lack of in rem jurisdiction. The trial court made the following findings:
“1. $32,660.10c [2] was seized by the Opelika Police Department on August 13, 2014.
“2. Federal authorities approved the ‘adoptive seizure’ of said funds on August 27, 2014, and commenced an administrative forfeiture proceeding.
“3. The seized property was transferred to federal authorities on September 2, 2014.
“4. [Gray] filed his complaint in the Circuit Court of Lee County Alabama on October 20, 2014.”
The trial court determined that “in rem jurisdiction was vested in the federal courts [sic] no later than September 2, 2014, before jurisdiction could have vested in this Court on October 20, 2014.”
Gray filed a motion to reconsider the dismissal, which the trial court denied on May 8, 2015. On May 19, 2015, Gray filed a timely notice of appeal to this court.

Discussion

We construe a motion to dismiss on the ground of a lack of in rem jurisdiction similarly to a Rule 12(b)(1), Ala. R. Civ. P., motion to dismiss for lack of subject-matter jurisdiction and a Rule 12(b)(2), Ala. R. Civ. P., motion to dismiss for lack of personal jurisdiction. Our review of the trial court’s ruling on the motion to dismiss is therefore de novo. Nance v. Matthews, 622 So.2d 297, 299 (Ala.1993) (“On appeal, a dismissal is not entitled to a presumption of correctness.”); see Mattel, Inc. v. Barbie-Club.com, 310 F.3d 293, 298 (2d Cir. 2002) (“We review de novo a dismissal for lack of in rem jurisdiction.”).
We note first that “[e]videntiary matters may be freely submitted on a motion to dismiss that attacks jurisdiction.” Williams v. Skysite Commc’ns Corp., 781 So.2d 241, 245 (Ala.Civ.App.2000) (citing Committee Comments, Rule 12, Ala. R. Civ. P.). When a party has moved to dismiss the case for lack of in rem jurisdiction, the party asserting in rem jurisdiction bears the burden of proving it. See Ex parte Safeway Ins. Co. of Alabama, Inc., 990 So.2d 344, 349 (Ala.2008) (“ ‘Once a defendant has moved to dismiss a case pursuant to Rule 12(b)(1), “the plaintiff bears the burden of establishing the factual predicates of jurisdiction by a preponderance of the evidence.” ’ ” (quoting Lindsey v. United States, 448 F.Supp.2d 37, 42 (D.D.C.2006)(abrogated on other grounds), quoting in turn Erby v. United States, 424 F.Supp.2d 180, 182 (D.D.C.2006), citing in turn Lujan v. Defenders of Wildlife, 504 U.S. 555, 561, 112 S.Ct. 2130, 119 L.Ed.2d 351 (1992))); Ex parte Covington Pike Dodge, Inc., 904 So.2d 226, 229 (Ala. 2004)(“ ‘ “[T]he plaintiff bears the burden of proving the court’s personal jurisdiction over the defendant.” ’ ” (quoting Ex parte Dill, Dill, Carr, Stonbraker & Hutchings, P.C., 866 So.2d 519, 525 (Ala.2003), quoting in turn Daynard v. Ness, Motley, Loadholt, Richardson & Poole, P.A., 290 F.3d 42, 50 (1st Cir.2002))); and Mattel, Inc., *435 310 F.3d at 298 (“On de novo review, ‘the burden of proving jurisdiction is on the party asserting it’.... ” (quoting Robinson v. Overseas Military Sales Corp., 21 F.3d 502, 507 (2d Cir.1994))).
We must construe any allegations in the complaint not controverted by the moving party’s evidence as true. If the moving party presents a prima facie showing of the court’s lack of in rem jurisdiction, the nonmoving party’s jurisdictional allegations carry no presumptive weight. The nonmoving party must then rely on more than the allegations in the complaint by substantiating the jurisdictional allegations with competent proof. See Ex patie Covington Pike Dodge, Inc., 904 So.2d at 229 (regarding dismissal based on lack of personal jurisdiction).
In an adoptive-seizure case, concurrent federal and state in rem jurisdiction cannot attach to the same seized property. Green v. City of Montgomery, 55 So.3d 256, 259 (Ala.Civ.App.2009). If federal in rem jurisdiction attached to the seized property before the initiation of Gray’s action, the trial court lacked in rem jurisdiction, and any judgment other than one dismissing the action is void. Ruiz v. City of Montgomery, 200 So.3d 26, 31 (Ala.Civ. App.2015) (citing Ex parte Citizens Bank, 879 So.2d 535, 538 (Ala.2003), and United States v. 51 Pieces of Real Prop. Roswell, N.M., 17 F.3d 1306, 1309 (10th Cir.1994)).
We first address Gray’s contention that the City and Carswell never established that a federal adoptive seizure had occurred through the materials filed in support of their motion to dismiss. In Green v. City of Montgomery, this court described adoptive seizures by federal officials:
“The adoptive-seizure process begins when state or local authorities seize property as part of a criminal investigation or arrest. Generally, the state or local officials either make a determination that forfeiture is not possible under state law or conclude that it is advantageous to them to transfer the matter to federal authorities for a federal administrative forfeiture proceeding. See I.R.S. Manual 9.7.2.7.3 (July 25, 2007); Asset Forfeiture Law, Practice, and Policy, Asset Forfeiture Office, Criminal Division, United States Department of Justice, Vol. I (1988) at 38 (cited in Johnson v. Johnson, 849 P.2d 1361, 1363 (Alaska 1993)). Once state or local officials have determined that an adoptive seizure is advantageous, they file a request with federal authorities. The appropriate federal agency then decides whether to accept or reject the request. If the adoptive-seizure request is accepted, the property is taken into the custody of federal agents and federal administrative forfeiture proceedings begin.”
55 So.3d at 258. The successful result of federal administrative forfeiture proceedings is a declaration of forfeiture that “shall have the same force and effect as a final decree and order of forfeiture in a judicial forfeiture proceeding in a district court of the United States.” 19 U.S.C. § 1609(b).
Gray refers to the lack of documentation regarding the OPD’s request for the DEA to adopt the seizure and the DEA’s acceptance of a federal adoption of the seizure. In Green, the proceedings for an administrative forfeiture were incomplete, and the type of documentation to which Gray refers was pertinent to our determination of when the purported federal adoption of the seizure began. In this case, the City and Carswell submitted a chain-of-custody form showing a transfer of the currency from the OPD to federal officials on September 2, 2014, and a declaration- *436 of-forfeiture certificate regarding the currency. The declaration-of-forfeiture certificate indicates that federal administrative forfeiture proceedings have been completed and that federal adoption of the seizure occurred on August 27, 2014. The evidence presented a prima facie showing of an adoptive seizure by federal officials and, thus, federal in rem jurisdiction over the currency before Gray filed his complaint on October 20, 2014. Gray presented no evidence to the contrary. We therefore affirm the trial court’s finding that federal officials had adoptively seized the currency before the filing of the complaint in the trial court.
Alternatively, Gray argues that the trial court had in rem jurisdiction over the currency when it was seized by the OPD and Carswell, thereby excluding the possibility of federal in rem jurisdiction, because, he alleges, the OPD seized the currency as property that was being either illegally brought into or illegally taken out of the state. In support, Gray cites to Ex parte James, 780 So.2d 693 (Ala.2000). As explained by the United States District Court for the Middle District of Alabama, Ex parte James does not provide support for that argument:
“The decision in Ex parte James, 780 So.2d 693 (Ala.2000), concerned the question whether the State of Alabama had jurisdiction over the defendant, While the court described in passing circumstances under which a court would have jurisdiction over property in criminal matters, it also noted that jurisdiction over property in criminal cases ‘rarely arises.’ Ex parte James, 780 So.2d at 696. This decision does not address the proper conditions for in rem jurisdiction in a civil forfeiture matter and is therefore inapposite to the case at hand.”
United, States v. Ninety Six Thousand Three Hundred Seventy Dollars in United States Currency, note 3 (Civil Action No. 3:14-CV-356-WHA, Nov. 12, 2014)(M.D.Ala.2014) (not published in F.Supp.3d). Moreover, we note that Gray fails to cite to facts in the record to support the allegation that the currency was illegally brought into or out of the state. He therefore fails to establish error on the part of the trial court based on this argument.
Gray next argues that the trial court had in rem jurisdiction over the currency because a seizure of property pursuant to § 20-2-93 subjects the property to in rem jurisdiction of a state court. This court has addressed that argument and has held “that Alabama law requires a two-step process before state jurisdiction attaches: possession and the filing of an in rem action.” Ruiz, 200 So.3d at 29-30 (citing Green, 56 So.3d at 263). Gray commenced the action seeking the return of the currency in the trial court after the federal adoptive seizure of the currency had occurred. Therefore, the two-step process was not met and in rem jurisdiction could not have vested in the trial court.
Gray further argues that the OPD could not transfer the currency to federal officials because, he asserts, state officials had the duty to promptly institute condemnation proceedings in a state circuit court. Section 20-2-93(h), which provides for state forfeiture actions regarding property seized pursuant to § 20-2-93, states, in relevant part: “Except as specifically provided to the contrary in this section, the procedures for the condemnation and forfeiture of property seized under this section shall be governed by and shall conform to the procedures set out in Sections 28-4-286 through 28—4—290[, Ala. Code 1976].” Section 28-4-286, Ala.Code 1976, states, in relevant part:
*437 “It shall be the duty of such officer in the county or the Attorney General of the state to institute at once or cause to be instituted condemnation proceedings in the circuit court by filing a complaint in the name of the state against the property seized, describing the same, or against the person or persons in possession of said vehicles of transportation, if known, to obtain a judgment enforcing the forfeiture.”
We have held that “ § 20-2-93 neither expressly nor impliedly prohibits a state or local law-enforcement agency from transferring seized property to federal authorities.” Green v. City of Montgomery, 55 So.3d at 261. Moreover, “[fjederal adoption of a seizure has the same effect as if the seizure had originally been made by the United States.” Id. at 259 (citing United States v. One Ford Coupe Auto., 272 U.S. 321, 47 S.Ct. 154, 71 L.Ed. 279 (1926)). Therefore, once federal officials adopt the seizure of the property, the effect is as if the federal officials had originally seized the property. As a result, in this case the federal adoption of the seizure removed any duty by the state officials to institute condemnation proceedings regarding the currency.
In addition, Gray argues that federal in rem jurisdiction never attached because federal officials received a cashier’s check for the currency instead of the actual bills that had been seized. “So long as the state court has not exercised in rem jurisdiction, federal jurisdiction begins the moment the res is controlled by federal agents.” Green, 55 So.3d at 263 (citing United States v. $506,231 in United States Currency, 125 F.3d 442 (7th Cir.1997)). “The federal government controls the res when it is ‘taken or detained’ during a time when no other court has jurisdiction over the res.” Id. at 264 (quoting 21 U.S.C. § 881(c)). We consider whether the conversion of the currency into a cashier’s check had an effect in this case on the transfer of the res to federal officials.
Under Alabama forfeiture law, cash is considered fungible and may be replaced by a monetary instrument such as a cashier’s check. Section 15-5-63, Ala.Code 1975, a part of the Alabama Comprehensive Criminal Proceeds Forfeiture Act, § 15-5-60 et seq., Ala.Code 1975, provides, in part:
“(5)a. In cases where the property to be forfeited is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution, or other like fungible property, it shall not be necessary for the state to identify the specific property, other than as U.S. currency, cash, monetary instruments in bearer form, or as funds deposited in an account in a financial institution, involved in the offense that is the basis for the forfeiture action. Actual serial numbers or other detailed descriptions are not required.
“b. It shall not be a defense that the property involved in such an action has been removed and replaced by identical property.”
Moreover, the United States Court of Appeals for the Third Circuit addressed the issue of possession of cash that is converted into a cashier’s check for the purposes of forfeiture. United States v. Thomas, 319 F.3d 640 (3d Cir.2003). The Third Circuit Court of Appeals adopted the approach of other federal circuits, holding that conversion of cash into a fungible surrogate such as a cashier’s check does not undermine in rem jurisdiction for the purposes of forfeiture. Id. at 644. See Madewell v. Downs, 68 F.3d 1030, 1042 n. 14 (8th Cir.1995) (holding that “[c]urrency, cashier’s checks, and bank deposits are simply surrogates for each other, and in modern society are cer *438 tainly regarded as ‘fungible,’ when the question is ownership of the funds each represents”); and United States v. $46,588 in United States Currency and $20.00 in Canadian Currency, 103 F.3d 902, 905 (9th Cir.1996) (holding that “the cashier’s check was an appropriate, fungible surrogate for the seized currency”). Although “[i]t behooves authorities to preserve seized money in the form in which they seized it when they intend to use it as physical evidence in a trial,” Thomas, 319 F.3d at 644, the Third Circuit Court of Appeals explained:
“Historically, forfeiture proceeded from the legal fiction that property used in the commission of a crime itself offends the law. See, e.g., The Palmyra, 25 U.S. (12 Wheat.) 1, 14, 6 L.Ed. 531 (1827). The forfeited res, as a legal entity, is identical with the physical article when the property is, for example, a sea vessel, an automobile, or a firearm. Currency, however, differs substantially from such objects. Paper currency, in the form of the Federal Reserve Note, is defined as an ‘obligation[ ] of the United States’ that may be ‘redeemed in lawful money on demand.’ 12 U.S.C. § 411 (2002). These bills are not ‘money per se but promissory notes supported by the monetary reserves of the United States. When an individual engages in a criminal transaction with paper currency, although the individual certainly uses the notes to accomplish the criminal end, the currency’s monetary value funds the transaction and is also an appropriate target of forfeiture. This result also follows from the fact that an individual who uses legal documents representing ownership of land to raise funds for a criminal purpose renders the land itself subject to forfeiture. See United States v. RD 1, Box 1, Thompsontown, 952 F.2d 53 (3d Cir.1991). It would be absurd, in that case, to suppose that forfeiture could attach only to the document and not to the legal interests represented by that document. We therefore hold that the DEA did not abandon the res when it converted the currency to a cashier’s check.”
Thomas, 319 F.3d at 644-45.
We conclude that the conversion of the seized currency into a cashier’s check had no effect on the transfer or control of the res for the purposes of determining in rem jurisdiction. Gray therefore has failed to show an error in the trial court’s holding that federal in rem jurisdiction attached to the seized currency.
For the foregoing reasons, we affirm the judgment.
AFFIRMED.
THOMPSON, P.J., and PITTMAN, THOMAS, and MOORE, JJ., concur.

. Section § 20-2-93 provides, in relevant part:
“(a) The following are subject to forfeiture:
[[Image here]]
"(4) All moneys, negotiable instruments, securities, or other things of value furnished or intended to be furnished by any person in exchange for a controlled substance in violation of any law of this state; all proceeds traceable to such an exchange; and all moneys, negotiable instruments, and securities used or intended to be used to facilitate any violation of any law of this state concerning controlled substances;
[[Image here]]
"(b) Property subject to forfeiture under this chapter may be seized by state, county or municipal law enforcement agencies upon process issued by any court having jurisdiction over the property. Seizure without process may be made if:
“(1) The seizure is incident to an arrest or a search under a search warrant or an inspection under an administrative inspection warrant;
[[Image here]]
"(4) The state, county or municipal law enforcement agency has probable cause to believe that the property was used or is intended to be used in violation of this chapter.”

. We note that this amount differs from the amount Gray alleged was seized. This amount reflects the amount the City and Cars-well asserted was seized.